RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 09a0310p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

          *v.*                                                    No. 07-4197

DAVID L. BROWN,
                    *Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 04-00083—John R. Adams, District Judge.

Submitted: April 22, 2009

Decided and Filed: August 26, 2009

Before: CLAY and McKEAGUE, Circuit Judges; HOLSCHUH, District Judge.[*]

_____

## COUNSEL

**ON BRIEF:** Charles E. Fleming, FEDERAL PUBLIC DEFENDER'S OFFICE, Cleveland, Ohio, for Appellant. Daniel R. Ranke, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee.

_____

## OPINION

_____

CLAY, Circuit Judge. Defendant David L. Brown appeals the district court's judgment imposing a 327-month sentence of imprisonment for charges involving the sexual exploitation of children pursuant to 18 U.S.C. § 2251(b) and § 2252(a) *et seq.* In an earlier appeal before this Court, we remanded the case for resentencing with

---

[*]The Honorable John D. Holschuh, Senior United States District Judge for the Southern District of Ohio, sitting by designation.

instructions that the district court consider evidence relevant to whether Defendant had exploited more than one minor as required for application of U.S.S.G. § 2G2.1(d)(1).[1] The district court considered the evidence and determined that its prior sentencing determinations were appropriate. Defendant now argues (1) that the court improperly applied the Guidelines on remand and (2) that the sentence imposed is substantively unreasonable. For the reasons that follow, we **AFFIRM** Defendant's sentence.

## BACKGROUND

### A.     Procedural History

On February 18, 2004, a federal grand jury returned a four-count indictment against Defendant. Count One alleged that Defendant violated 18 U.S.C. § 2251(b) by being the legal guardian of a minor and knowingly permitting the minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct using materials in interstate commerce. Counts Two and Three alleged that he violated 18 U.S.C. § 2252(a)(2) by receiving, through interstate commerce, computer images and files which contained visual depictions of minors engaged in sexually explicit conduct. Count Four alleged that he violated 18 U.S.C. § 2252(a)(4)(B) by possessing over 1500 computer images that depicted minors engaged in sexually explicit conduct and had been shipped in interstate commerce and produced via materials that had been shipped in interstate commerce.

Defendant filed a motion to dismiss Count One, arguing that 18 U.S.C. § 2251(b) was unconstitutional on its face and as applied to him, but the district court denied his motion without a hearing. Defendant subsequently entered into a conditional written plea agreement, in which the government agreed to dismiss Count Four and Defendant pleaded guilty to Counts One through Three, while reserving his right to appeal the denial of his motion to dismiss and any errors in the district court's application of the advisory Guidelines.

---

[1] The district court applied the 2002 edition of the United States Sentencing Guidelines. At that time, this sentencing enhancement was codified as U.S.S.G. § 2G2.1(c)(1).

At sentencing, Defendant objected to numerous sentencing enhancements proposed in the presentence investigation report ("PSR"). The court overruled Defendant's objections and sentenced him to 327 months of imprisonment, at the top of the advisory Guidelines. Defendant filed a timely notice of appeal. This Court affirmed the denial of Defendant's motion to dismiss but remanded the case for resentencing to consider whether the offense charged in Count One involved the exploitation of more than one minor under U.S.S.G. § 2G2.1. *See United States v. Brown*, No. 05-3732, 2006 U.S. App. LEXIS 27483 (6th Cir. Nov. 6, 2006).

The district court conducted a new sentencing hearing and considered evidence submitted by both parties. The court overruled Defendant's renewed objections to the sentencing calculations, rejected his request for a downward variance, and resentenced him to the same sentence of 327 months of imprisonment. The court entered judgment on the sentence on September 14, 2007, and Defendant filed a timely notice of appeal.

**B.     Substantive Facts**

Based on information received from international authorities, agents of the Bureau of Immigration and Customs Enforcement in Cleveland, Ohio ("the agents" or "customs agents") executed a search warrant at Defendant's residence in October 2003. Pursuant to the warrant, the agents seized computers, compact discs ("CDs"), floppy discs, digital cameras, video home system ("VHS") tapes, child erotica books, and miscellaneous documents and pictures from Defendant's residence. After being advised of his rights, Defendant agreed to speak with the agents. He admitted to downloading images of child pornography from the internet, but denied ever having posted, manufactured, produced, or made pornography.

After examining the items that were seized in the search, agents determined that Defendant's computer hard drive contained 195 images of child pornography, and an additional 945 images that had been deleted but were recovered by the agents. The images involved pornographic depictions of infants and toddlers. In addition, the CDs that were seized contained approximately 1,323 ".jpg" files (compressed photographic

image files) and 111 ".mpg" files (compressed digital video files) that contained child pornography.

Agents also discovered images of Defendant's identical twin step-granddaughters, who were between 27 and 39 months old at the time they were photographed. These images included digital photographs and videos of the step-granddaughters naked in the bathtub, on the toilet, and on a bed. According to the PSR, approximately six of the images of the step-granddaughters focused on the girls' pubic areas, and one image depicted one of the granddaughters lying on her back, using both hands to spread her vagina open. At subsequent interviews with customs agents, Defendant acknowledged that the images were of his twin step-granddaughters and that he took the pictures while he was home alone with them.

In his plea agreement, Defendant acknowledged that between November 2001 and November 2002, he was the legal guardian of his step-granddaughters, who were born in August 1999. He acknowledged that during that time, "he permitted one or both of said twin girls to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct[.]" (Joint Appendix ("J.A.") at 68-69.)

The PSR calculated Defendant's total offense level to be 39 with a criminal history category of I. As part of these calculations, the PSR recommended that the court apply an enhancement relative to Count One which provided: "If the offense involved the exploitation of more than one minor, Chapter Three, Part D (Multiple Counts) shall be applied as if the exploitation of each minor had been contained in a separate conviction." U.S.S.G. § 2G2.1(d)(1). At the sentencing hearing, Defendant conceded that DSC07049.jpg, the picture of one of the twins lying on the bed with her legs spread apart, was lascivious in nature. However, he argued that no other picture depicted "sexually explicit conduct" as defined by statute to include "lascivious exhibition of the genitals or pubic area of any person." 18 U.S.C. § 2256(2)(A)(v). The government admitted that it couldn't "confidently prove beyond a reasonable doubt" that Defendant had taken lascivious photographs of both step-granddaughters, but argued that a number of images were borderline and that the court was entitled to make a determination as to

the nature of the photographs.  (J.A. at 97-98.)  Over Defendant's objection, the district court applied the enhancement to Count One after finding that Defendant had produced sexually explicit depictions of both step-granddaughters.

In his first appeal to this Court, Defendant challenged the aforementioned enhancement to Count One along with various other offense level increases applied by the district court.  *Brown,* 2006 U.S. App. LEXIS 27483.  This Court vacated the sentence and remanded for resentencing, directing the district court to consider evidence relevant to whether Defendant exploited more than one minor as required under U.S.S.G. § 2G2.1.  *Id.* at *29.

At resentencing, the district court heard testimony from a customs agent and reviewed several evidentiary items, including CDs containing images and movie files of Defendant's step-granddaughters and pornographic images of other children that Defendant had downloaded onto his computer from the internet.  The court concluded that the original sentence was appropriate because the evidence presented by the government clearly demonstrated that there was more than one minor victim.  The district court overruled Defendant's objections to the sentencing calculations under U.S.S.G. § 2G2.1 and rejected his request for a downward variance.  The court then resentenced Defendant to 327 months of imprisonment: 240 months on Count One, to be served consecutively to 87 months on Count Two and concurrently with 87 months on Count Three.  Defendant now appeals that sentence.

## DISCUSSION

### Standard of Review

On appeal, sentences are reviewed for reasonableness under an abuse of discretion standard.  *United States v. Booker*, 543 U.S. 220, 260-61 (2005); *United States v. Sedore*, 512 F.3d 819, 822 (6th Cir. 2008).  The reasonableness determination has both a procedural and substantive component.  *United States v. Jones*, 445 F.3d 865, 869 (6th Cir. 2006).  First, an appellate court must ensure that the district court did not commit significant procedural error, such as:

failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence - including an explanation for any deviation from the Guidelines range.

*Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586, 597 (2007).

Assuming that the court's sentencing decision is procedurally sound, this Court should then consider the substantive reasonableness of the sentence. *Id.* Substantive reasonableness turns on whether the length of the sentence is unreasonable because the sentencing court "select[ed] the sentence arbitrarily, bas[ed] the sentence on impermissible factors, . . . or [gave] an unreasonable amount of weight to any pertinent factor." *United States v. Webb*, 403 F.3d 373, 385 (6th Cir. 2005). This Court grants a presumption of substantive reasonableness to sentences within the advisory Guidelines range. *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006); *see also Rita v. United States*, 551 U.S. 338, 355 (2007) (approving of presumption). The district court's interpretation of the advisory Guidelines is reviewed *de novo*, and its findings of fact are reviewed for clear error. *United States v. Kosinski*, 480 F.3d 769, 774 (6th Cir. 2007). Deference is given to the court's application of the Guidelines to the facts. *Id.*

I.

In his first assignment of error, Defendant argues that because there is insufficient evidence that he exploited more than one of his step-granddaughters, the district court committed procedural error when it applied the enhancement set forth in U.S.S.G. § 2G2.1(d)(1).

Count One of the indictment alleged that Defendant violated 18 U.S.C. § 2251(b) by being the legal guardian of a minor and knowingly permitting the minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct using materials in interstate commerce. The advisory Guidelines provide that "[i]f the offense involved the exploitation of more than one minor, Chapter Three, Part D (Multiple Counts) shall be applied as if the exploitation of each minor had been

contained in a separate conviction." U.S.S.G. § 2G2.1(d)(1). The complexity in this case arises because Defendant's twin step-granddaughters are identical twins who are virtually indistinguishable in photographs.  Because the picture that is most clearly lascivious does not include both girls, it is difficult to look at any one photograph and determine whether Defendant exploited more than one minor.  Although some of the less graphic pictures and videos seized from Defendant's home show both girls, the district court did not determine whether those pictures were lascivious at Defendant's first sentencing hearing.

> In Defendant's first appeal, this Court made the following observations:
>
> It is apparent that the district judge did not review any of the photographs prior to applying the enhancement under § 2G2.1[d](1). Instead, he relied solely on the findings contained in the pre-sentence report and made inferences based on those findings. The parties have conceded that there was one photo which was clearly lascivious. However, that photo depicted only one minor. It is unclear based on the record before us whether there was evidence submitted by the government by which the court could have concluded that there was more than one minor victim. Therefore, Brown is entitled to a remand to allow the government to submit (and the court to fully consider) all evidence regarding the number of victims involved in the offense charged in Count One.

*See Brown*, 2006 U.S. App. LEXIS 27483, at *23-24.

On remand, the district court heard testimony from a senior special agent of the Department of Homeland Security, Immigration and Customs Enforcement.  The agent identified exhibits which were entered into evidence.  Exhibit A included a "Statement of Rights" form signed by Defendant, along with images recovered from a disc seized at Defendant's home which were printed and signed by Defendant.  Exhibit B included printed photographs with a statement in which Defendant indicated that the attached pictures were of his step-granddaughters.  Exhibit C was a CD that contained photographic and video images of Defendant's step-granddaughters.  Exhibit D was a CD that contained images that Defendant had downloaded from the internet involving unknown children in the bathtub, in the shower, or in the act of urination.

The agent testified that all of the photographs and video images contained in the CDs were seized during the search of Defendant's residence and that, after being advised of his rights, Defendant admitted that he had taken the photographs and videos of the twins. The agent explained that Exhibit C included all of the images of the step-granddaughters, but that Exhibit D was a "representative sample" of images of other unknown children.

Defense counsel objected to the introduction of Exhibit D, arguing that the CD of images of unknown children was not relevant to whether Defendant had sexually exploited both step-granddaughters, and that "to show images that do not relate to Count 1 has no purpose here except to inflame the Court." (J.A. at 147.) The prosecutor argued that Exhibit D was relevant because Defendant's downloading of the images of unknown children in the bathtub or on the toilet "indicated his feeling that those pictures were sexual in nature, and that had a bearing on his intent when he was taking pictures of his step-granddaughters in the bathtub or on the toilet. And it shows that his purpose for creating those photos was for his sexual gratification . . . ." (J.A. at 148.) Upon defense counsel's suggestion, the court determined that it would first look at the images of the step-granddaughters (Exhibit C) before determining whether it needed to see Exhibit D.

The district court indicated on the record that it was reviewing the images in Exhibit C, which included numerous photographic images and three short movie files of the two step-granddaughters, each approximately ten seconds in length. After the court reviewed the evidence, defense counsel renewed his objection to the admission of Exhibit D, but the court overruled the objection and stated:

> I think, in abundance of caution, having seen the photos set forth in Exhibit C, which are virtually all of the minor victims in a state of either bathing and/or using the facilities, . . . I will review Exhibit D, as it may be appropriate, of whether or not these are the types of photos that – which the defendant found interest in, if that's the way we would characterize it. [. . .] [I]t would reaffirm and ratify that indeed the defendant's modus [operandi], so to speak, was to view child pornography in this vein, that would be of some help to the Court that he

has the nature of other forms of pornography that were discovered in the course of the investigation.

(J.A. at 153.)  The court then viewed the photographs in Exhibit D.

After hearing arguments by both attorneys the court concluded, by a preponderance of the evidence, that "far more than one" of the pictures in Exhibit C was "clearly lascivious" because more than one photograph "focused on the genital area of these little girls."[2] (J.A. at 163.)  With respect to whether both step-granddaughters were victims, the court acknowledged that the girls were identical twins and stated the following:

> [P]erhaps the most compelling evidence in support of the fact that more than one child is involved is set forth in the disturbing movie clips set forth at 00455 and 00456, also of the Government's Exhibit C, which indicate and show two of these little girls in the bathtub.  At that time during the course of both of these very brief movie clips, they are being fed with whipped cream, and it is clear to me that those disturbing videos show both children.  There is no dispute as to that.  And there is certainly no dispute as to the lascivious nature of those movie clips.

(J.A. at 164.)

The court then noted that even without the court's review of the CD, the "defendant's admission to the Government's Exhibit A and B also support the fact and finding that indeed more than one minor child was involved in this conduct." (*Id.*)  In addition, the court stated:

> The other pornographic images downloaded by this defendant, which are set forth in government's Exhibit D, clearly set forth beyond a shadow of a doubt that the defendant's proclivity, and "sickness" is the only word to use, was focused on minor children, little children, in various states of bathing and/or using the rest room.  That is what feeds his sick desires, and Exhibit D is evidence of that fact and supports all the Court's findings regarding the earlier photos set forth in Government's Exhibit C.

---

[2]The district court indicated that the photographs identified as DSC00829.jpg, DSC00831.jpg, DSC00832.jpg, DSC1016 through 1020.jpg, DSC1054.jpg, and DSC7049.jpg were clearly lascivious. (J.A. at 163.)  The court also found that the photograph identified as DSC0014.jpg was clearly lascivious, but this appears to be a typographical error since Exhibit C contains no file with that name.  We presume that the court was referring to DSC00814.jpg, which depicts a girl who is naked from the chest down.

(J.A. at 165.) The court therefore reaffirmed its earlier advisory Guidelines calculations, including the application of U.S.S.G. § 2G2.1(d)(1).

A.

First, we must determine the legal standard to apply in determining whether a photograph or video is "lascivious." Count One of the indictment required the production of a depiction of sexually explicit conduct, which is defined to include the "lascivious exhibition of the genitals or pubic area of any person[.]" 18 U.S.C. § 2256(2)(A)(v). Congress has not defined the term "lascivious." This Court, in line with other circuit courts, has applied a six factor test for "lasciviousness," as set forth in *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986).[3]

Under *Dost*, the relevant factors include:

1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;

2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;

3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;

4) whether the child is fully or partially clothed, or nude;

5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;

6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

636 F. Supp. at 832. In applying *Dost*, however, we have noted that "this list is not exhaustive, and an image need not satisfy every factor to be deemed lascivious."

---

[3]*See United States v. Campbell*, 81 F. App'x 532, 536 (6th Cir. 2003)*. See also United States v. Rivera*, 546 F.3d 245, 250 (2d Cir. 2008)*; United States v. Frabizio*, 459 F.3d 80, 87 (1st Cir. 2006)*; Doe v. Chamberlin*, 299 F.3d 192, 196 (3d Cir. 2002); *United States v. Horn*, 187 F.3d 781, 789 (8th Cir. 1999); *United States v. Wolf*, 890 F.2d 241, 244-46 (10th Cir. 1989); *United States v. Wiegand*, 812 F.2d 1239 (9th Cir. 1987); *United States v. Rubio*, 834 F.2d 442, 448 (5th Cir. 1987). Some of these courts have criticized the *Dost* test, but have continued to use it to a limited extent. *See Frabizio*, 459 F.3d at 87 (warning that courts must take care not to give the factors greater weight than is warranted); *United States v. Hilton*, 257 F.3d 50, 57 (1st Cir. 2001) (noting that the *Dost* factors, although generally relevant, are not comprehensive).

*Campbell*, 81 F. App'x at 536; *see also Frabizio*, 459 F.3d at 87 (explaining that the *Dost* factors "are neither comprehensive nor necessarily applicable in every situation" and that "[t]he inquiry will always be case-specific.") (internal quotation marks and citations omitted).

B.

With the aforementioned considerations in mind, we now turn to the images seized from Defendant's house. As a preliminary matter, Defendant argues that because the government conceded at the sentencing hearing that it could not prove beyond a reasonable doubt that more than one of the twins had been exploited, the court should not have applied the enhancement. We reject this argument out of hand. The government's concession did not prevent the district court from considering all of the evidence to determine whether the government had proven by a *preponderance of the evidence*, for the purposes of applying the sentencing enhancement, that Defendant had exploited more than one twin. In fact, that is exactly what the district court was instructed to do on remand.

With respect to the images at issue, a number of *Dost* factors are not in dispute. All of the images presented by the government depict the girls nude, which satisfies the fourth *Dost* factor and makes the portions of the third factor (the appropriateness of attire) irrelevant. Moreover, whether the depiction "suggests sexual coyness or a willingness to engage in sexual activity," is not applicable given the age of the toddlers. *See Dost*, 636 F. Supp. at 832. The salient factors are whether the images focus on the genital regions of the girls and whether the images were intended to elicit a sexual response in the viewer.

We agree with the district court that the image "DSC07049.jpg" is clearly lascivious. The image depicts one of the toddlers lying nude on a bed touching her genitalia while her legs are spread. The toddler is fully nude, the photograph is focused on the girl's genitalia, and the positioning of the girl's hand appears intended to be sexually suggestive. By looking at nothing more than the four corners of this

photograph, it becomes clear that the photograph focuses on the genitals and was intended or designed to elicit a sexual response in the viewer. *See id.*

As discussed above, however, this image depicts only one girl. In order to determine whether Defendant produced lascivious images of *both* girls, we must look to the remaining images.

The district court relied heavily on videotapes of the girls in a bathtub, but we find this emphasis unwarranted. The videos show the girls being fed whipped cream by a woman. At sentencing, the district court stated that these "disturbing" videos were "perhaps the most compelling evidence in support of the fact that more than one child is involved" and found that there was "certainly no dispute as to the[ir] lascivious nature[.]" (J.A. at 164.) We do not agree that there is no dispute as to the nature of these videos. Aside from the fact that the girls are nude, the videos do not seem to satisfy any of the *Dost* factors, and we cannot agree that the videos are clearly lascivious.

Looking instead to the photographs, the district court found that images DSC00[8]14.jpg, DSC00829.jpg, DSC00831.jpg, DSC00832.jpg, DSC01016 through 1020.jpg, and DSC01054.jpg were lascivious because they "focus on the genital area of these little girls." (J.A. at 163.) In each of these images, the girls are fully nude (as they are in all of the images in the exhibit). The photographs do focus, at least arguably, on the girls' genitals insofar as the genitals are prominently visible at the center of the photographs. Moreover, although it was not discussed by the district court, a number of these and other photographs in the exhibit depict one or both girls from the shoulders down, with the girls' pubic area at the center of the photograph. The fact that the photographs do not include the girls' heads is odd and repeated, and when considered together with the focus on the girls' pubic area, suggests that there may have been an inappropriate or lascivious focus.

However, if we look only at the four corners of each of the aforementioned images, it would not be clear that the photographs (nude photographs that arguably focus on a child's genital area) are lascivious. *See Frabizio*, 459 F.3d at 88 ("one dispute

[among the circuits] is . . . how many of [*Dost*] factors must be present in an image for it to qualify as 'lascivious'"). The setting of most of the photographs—the bathtub, the toilet, and the floor—is not sexually suggestive, and the majority of the poses do not appear to be unnatural. We are therefore compelled to assess whether the district court could have properly looked beyond the four corners of the photographs.

The sixth *Dost* factor, which considers whether an image is intended to elicit a sexual response in the viewer, does not make clear whether a factfinder should focus only on the content of the image at issue, or whether it may consider the images in context with other images and evidence presented at trial. In *Campbell*, 81 F. App'x at 536, we did not explicitly reach this issue. Other circuits have noted that the sixth *Dost* factor is the "most confusing and contentious of the *Dost* factors" and begs a number of questions:

> Is this a subjective or objective standard, and should we be evaluating the response of an average viewer or the specific defendant in this case? Moreover, is the intent to elicit a sexual response analyzed from the perspective of the photograph's composition, or from extrinsic evidence (such as where the photograph was obtained, who the photographer was, etc.)?

*United States v. Amirault*, 173 F.3d 28, 34 (1st Cir. 1999).

A number of courts have addressed whether a court should limit its review to the four corners of the image, and have reached conflicting conclusions. *See Rivera*, 546 F.3d at 250 ("[T]hese images have context that reinforces the lascivious impression. [The victim] testified that Rivera arranged the poses and took the photographs. Rivera was responsible for the *mise-en-scene*. A reasonable jury could therefore find that Rivera composed the images in order to elicit a sexual response in a viewer--himself. These images are unquestionably 'lascivious' material[.]"); *but see Amirault*, 173 F.3d at 34 (expressing doubt that a factfinder should consider "the context surrounding the creation and acquisition of the photograph"). This Court has not decided if a factfinder can consider evidence other than the photograph itself, or if it must discern the photographer's intent by examining only the content of the photograph.

We, like our sister circuits, have adopted a test that considers whether "a visual depiction is *intended* or designed to elicit a sexual response in the viewer." *See Dost*, 636 F. Supp. at 832 (emphasis added). The use of the word "intended" seems to establish that the subjective intent of the photographer is relevant. *See United States v. Williams*, 128 S. Ct. 1830, 1839-40 (2008) ("[T]he other key phrase, 'in a manner . . . that is intended to cause another to believe,' contains only a subjective element: The defendant must 'intend' that the listener believe the material to be child pornography[.]") However, the word "intended" is found in the *Dost* court's test, and not in a criminal statute, so it is appropriate for us to determine if the element of intent *should* be examined in determining whether the image is lascivious.[4] Some courts have accepted arguments that lasciviousness should be determined from the image alone. *See United States v. Villard*, 885 F.2d 117, 122 (3d Cir. 1989) (holding, in the context of a sufficiency-of-the-evidence challenge to a jury verdict, that "[w]e must . . . look at the photograph, rather than the viewer," because if "we were to conclude that the photographs were lascivious merely because [the viewer] found them sexually arousing, we would be engaging in conclusory bootstrapping rather than the task at hand–a legal analysis of the sufficiency of the evidence of lasciviousness"). Other courts have explicitly avoided the question. *See Frabizio*, 459 F.3d at 89 ("The issue of the four corners rule, and even of what it means, has not been decided by this circuit, and we do not decide it here. The issue is complicated, and there are arguments going different ways.").

The lack of consensus among our sister circuits is understandable, given that there are important considerations weighing in favor of both perspectives. On one hand, there are strong arguments for considering context. Ignoring the contextual evidence construes the statute too narrowly as it inevitably fails to capture behavior that is "intended" to exploit children. This result is cause for particular concern in a context where young children are at risk. *See New York v. Ferber*, 458 U.S. 747, 761 (1982)

---

[4] As discussed above, Count One of the indictment required the production of a depiction of sexually explicit conduct, and 18 U.S.C. § 2256(2)(A) defines sexually explicit conduct to include the "lascivious exhibition of the genitals or pubic area of any person[.]" 18 U.S.C. § 2256(2)(A)(v). The *Dost* test, in turn, is used to define the term "lascivious."

(stating that there is a "particular and more compelling interest in prosecuting those who promote the sexual exploitation of children"). Moreover, strict adherence to a four corners test could harm criminal defendants in some circumstances by limiting consideration of contextual evidence that would show that images are art or innocent family photographs. *See United States v. Wolf*, 890 F.2d 241, 247 (10th Cir. 1989) (noting that "lasciviousness is not a characteristic of the child photographed but of the exhibition that the photographer sets up for an audience that consists of himself or like-minded individuals.").

On the other hand, if we frame the inquiry too broadly and place too much emphasis on the subjective intent of the photographer or viewer (in this case, the same person), a seemingly innocuous photograph might be considered lascivious based solely upon the subjective reaction of the person who is taking or viewing it. *See, e.g.*, *Amirault*, 173 F.3d at 34 (recognizing that if the focus of the inquiry is on an individual's "subjective reaction" to a photograph, "a sexual deviant's quirks could turn a Sears catalog into pornography"). This could invoke the constitutional concerns associated with criminalizing protected expressive activity. *See Williams*, 128 S. Ct. at 1841 (analyzing whether a statute that criminalized the pandering or solicitation of child pornography reached too far because it "criminalize[d] a substantial amount of protected expressive activity."); *Osborne v. Ohio*, 495 U.S. 103, 112 (1990) ("We have stated that depictions of nudity, without more, constitute protected expression."). Moreover, as in many areas of criminal law, a rule that considers too much prejudicial context—*e.g.*, facts such as the past behavior of the defendant, other alleged deviancies of the defendant, and criminal conduct that is not directly related to the charge at hand—could pose due process concerns and could be used to convict defendants for acts other than those for which he or she is prosecuted.

In sum, while the context in which an image was taken likely helps a factfinder understand whether an image was intended to elicit a sexual response in the viewer, there is a countervailing and significant risk that a context-specific test could reach too broadly and "over-criminalize" behavior. In light of these competing concerns, we find that it

is appropriate to apply a "limited context" test that permits consideration of the context in which the images were taken, but limits the consideration of contextual evidence to the circumstances directly related to the taking of the images.

A number of factors can illuminate the context in which photographs were taken. These include, *inter alia*, evidence about (1) where, when, and under what circumstances the photographs were taken, (2) the presence of other images of the same victim(s) taken at or around the same time,[5] and (3) any statements a defendant made about the images. Consideration of these factors can help factfinders consider the way a defendant "arranged the poses and took the photographs" as discussed in *Rivera*, 546 F.3d at 250, and can help them resolve close judgment calls about whether an image inadvertently focuses on a child's genitalia, or whether it is intended to elicit a sexual response in the viewer.

However, we explicitly reject consideration of factors that do not relate directly to the taking of the images, such as past bad acts of the defendant, the defendant's possession of other pornography (pornography of another type or of other victims), and other generalized facts that would relate only to the general "unseemliness" of the defendant. This will avoid the undue prejudice associated with criminalizing behavior not targeted by the statute, and thus will avoid the constitutional concerns discussed above. *See Amirault*, 173 F.3d at 34; *Williams*, 128 S. Ct. at 1841 (discussed *supra*).

Applying the limited context test in the instant case, we find that the evidence supports the district court's determination that Defendant took lascivious photographs of more than one minor. First, there are over seventy photographic images and three video images of the step-grandchildren, each of which depicts one or both of the girls fully nude in the bathtub, standing in the bathroom, sitting on the toilet, lying on the carpet, or lying on a bed. The photographs capture the girls from a variety of angles, with a general tendency to focus on the girls' genitals. If there were a handful of photographs of a naked child playing in the bathtub, it could be believed that a picture

---

[5]Testimony from qualified experts about the metadata underlying digital images could be helpful in ascertaining when photographs were taken and whether photographs were taken in sequence.

inadvertently focused on a child's genitalia. Here, however, the sheer number of photographs in which the girls' genitals are prominently visible suggests that photographs were taken to elicit a sexual response in the viewer.

Second, the fact that Defendant took at least one clearly lascivious photograph of one of his step-granddaughters casts doubt upon any contention that the photographs were innocent family photographs and could help a factfinder understand Defendant's intent in taking and viewing any "borderline" photographs. While this fact alone would not make otherwise innocuous pictures lascivious, it provides "context that reinforces the lascivious impression." *See Rivera*, 546 F.3d at 250.

Third, according to Defendant's PSR, Defendant stated that he took the photographs of the twins when he was home alone with the girls, and that he put seventeen images of the twins on a CD with pornographic images of other children that he had downloaded from the internet. In addition, Defendant's plea agreement acknowledged that he "permitted one or both of said twin girls to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct." (J.A. at 68-69.) These acknowledgments suggest that the images at issue were "intended or designed to elicit a sexual response in the viewer" as discussed in *Dost*, 636 F. Supp. at 832.

Finally, many of the images highlighted by the district court, (DSC00[8]14.jpg, DSC00829.jpg, DSC00831.jpg, DSC00832.jpg, and DSC01054.jpg), as well as number of other images, (DSC00815.jpg, DSC07061.jpg, and DSC07063.jpg), depict one of the twins from the neck down with her genitals prominently visible in the center of the photograph. The district court could reasonably conclude that each of these images focuses on the girls' genitals.

In sum, considering the images themselves, the context of the photographs as a group, and Defendant's admissions, the district court could reasonably conclude that each of the images it highlighted, as well the other images highlighted by this Court, was lascivious.

C.

The remaining, and critical, question is whether the district court properly found, by a preponderance of the evidence, that the aforementioned photographs depict *both* girls.

A number of factors support the district court's conclusion. The girls are together in approximately half of the seventy plus photographs and videos in Exhibit C, and it does not appear that Defendant had a particular affinity toward one of the girls. It appears that many of the photographs were taken in sequence, within minutes of one another in the same location, which suggests that Defendant was actively photographing both girls, and not one in isolation.[6] Moreover, we found that at least eight photographs other than DSC07049.jpg—DSC00814.jpg, DSC00815.jpg, DSC00829.jpg, DSC00831.jpg, DSC00832.jpg, DSC01054.jpg, DSC07061.jpg, and DSC07063.jpg—properly could be found lascivious. Based on the totality of the evidence, it seems more likely than not that at least one of these pictures portrays the other twin.

Finally, as discussed above, Defendant admitted that he "permitted one *or both* of said twin girls to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct." (J.A. at 68-69 (emphasis added).) While the phrase "one or both" is not a clear admission that he exploited both girls, if Defendant believed that he exploited *only one* of the twins, he could have refused to sign the plea agreement as drafted.

In sum, considering the images themselves, the number and sequence of the images, and Defendant's admissions, the district court did not err in finding, by a preponderance of the evidence, that Defendant took lascivious images of more than one minor.

---

[6]For example, there are pictures of both girls, nude, playing on a bed, immediately followed by pictures of one nude girl on the same bed. Later, there is a photograph depicting the rear of both girls, standing next to the bathtub from the neck down, followed by two photographs depicting a naked girl in the same bathroom, from the chest down. And as mentioned above, nearly half of the images show both girls together.

D.

Finally, Defendant also argues that the district court improperly considered Exhibit D, which included images of other children downloaded by Defendant. He argues that these images were wholly irrelevant to the nature of the photographs at issue and that the prosecution's introduction of the exhibit only served to "inflame" the court.

Reviewing this issue *de novo*, we agree that the court erred in considering these images. *See United States v. Davidson*, 409 F.3d 304, 310 (6th Cir. 2005) (applying *de novo* review to a district court's conclusions of law and to mixed questions of law and fact). To be sure, the downloaded images of other children might shed light on Defendant's subjective intent in taking photographs of his step-granddaughters. However, as discussed above, when a court considers context in too broad a fashion, it can find an otherwise innocuous photograph lascivious, and runs the risk of convicting a defendant for conduct unrelated to the charges at hand. The district court's consideration of the evidence in Exhibit D crosses that line. The downloading of pornographic images of other children is a separate criminal act, accounted for in other counts of the indictment.[7] As we discussed above, evidence of other criminal acts and conduct relating to other alleged victims strays too far from the context of the photographs at hand and should not bear on whether a given image is lascivious. Consequently, the district court erred in considering these images.[8]

Because it is highly prejudicial in nature, consideration of this type of evidence could, in many cases, taint a court or jury's factual findings. However, in the instant case, the district court's legal error in considering Exhibit D was harmless. The court

---

[7]Counts Two and Three of the indictment alleged that Defendant violated 18 U.S.C. § 2252(a)(2) by receiving, through interstate commerce, computer images and files which contained visual depictions of minors engaged in sexually explicit conduct. Count Four alleged that he violated 18 U.S.C. § 2252(a)(4)(B) by possessing over 1500 computer images that had been shipped in interstate commerce and produced via materials that had been shipped in interstate commerce and depicted minors engaged in sexually explicit conduct.

[8]Our discussion addresses only whether it was proper for the district court to consider Exhibit D in the context of determining whether pictures of Defendant's step-granddaughters were lascivious. To be sure, the court was entitled to consider all of Defendant's criminal history when determining the length of his sentence. *See* 18 U.S.C. § 3553(a)(1) (directing courts to consider the "history and characteristics of the defendant[.]")

explicitly stated that it found images involving more than one minor to be lascivious based on its independent review of the images of the step-granddaughters in Exhibit C, and our review of the matter supports that conclusion. Moreover, any argument regarding an alleged intent by the prosecution to "inflame" the court is tempered by the fact that the evidence in Exhibit D was previously submitted to the court and deemed admissible to support the conduct charged in other counts of the indictment. Furthermore, in the absence of any indication to the contrary, we presume that the court is impervious to being "inflamed" or otherwise manipulated by the prosecution in ways that a jury might not be.

In sum, because the court explicitly stated that it found the images to be lascivious based on the images alone, and because there was sufficient evidence to support this determination, the court did not err in concluding that Defendant created lascivious images involving more than one minor. Giving deference to the court's application of the advisory Guidelines to the facts, *see Kosinski*, 480 F.3d at 774, we conclude that district court did not commit procedural error in applying U.S.S.G. § 2G2.1(d)(1).

## II.

Defendant also argues that his 327-month sentence is substantively unreasonable because it is greater than necessary to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2). At resentencing, Defendant argued that the court should exercise its discretion to impose a sentence below the advisory Guidelines range. He argued and continues to argue that a sentence of ten years was sufficient because he has only a ninth- grade education, has on two previous occasions been evaluated as borderline mentally retarded, was himself abused as a child, and was never previously accused or convicted of having improper sexual contact with a minor.

We find the sentence to be substantively reasonable notwithstanding these arguments. A sentence is substantively unreasonable if the court "selects the sentence arbitrarily, bases the sentence on impermissible factors, . . . or gives an unreasonable amount of weight to any pertinent factor." *Webb*, 403 F.3d at 385.

First, the record reflects that the district court considered the relevant § 3553(a) factors and Defendant's arguments regarding what he considered to be the appropriate length of his sentence at both sentencing hearings. This supports a finding that the sentence was not arbitrary or based on impermissible factors, as condemned in *Webb*. *See id.*

Second, the district court explained why it discounted Defendant's argument that he should be given a lower sentence in light of his diminished mental capabilities. More specifically, the court stated that it was not aware of any studies that would indicate that mental retardation would cause an individual to engage in Defendant's conduct and noted that Defendant had undergone a competency evaluation in which he indicated that he understood the wrongfulness of his conduct. The court also reasoned that Defendant was able to demonstrate significant sophistication in his use of computers. These factual findings undercut Defendant's arguments.

Finally, while the court downplayed the characteristics of Defendant and emphasized factors such as the nature of the offense, the likelihood of recidivism, and the need for protection of the public, the weight the court assigned to each § 3553(a) factor was not unreasonable. It was within the court's discretion to emphasize the need to protect young children. *See Ferber*, 458 U.S. at 761 (acknowledging that there is a particularly compelling interest in prosecuting and punishing offenders that sexually exploit children). Moreover, the fact that the sentence was within the Guidelines weighs in favor of affirming it. *See United States v. Poynter*, 495 F.3d 349, 352 (6th Cir. 2007) ("[t]he farther the judge's sentence departs from the guidelines sentence . . . the more compelling the justification based on factors in section 3553(a) must be.") (internal quotation marks and citations omitted); *see also Williams*, 436 F.3d at 708 (attaching a rebuttable presumption of reasonableness to sentences within the Guidelines range).

Ultimately, Defendant's arguments appear to contend that, given his personal characteristics, a different sentence was *justified*. While we might agree, he has not shown that a different sentence was *required*. *See United States v. Jackson*, 466 F.3d 537, 540 (6th Cir. 2006) (holding that "the fact that the district court did not give the

defendant the exact sentence he sought is not a cognizable basis to appeal, particularly where the district court followed the mandate of section 3553(a) in all relevant respects.").

In view of these circumstances and the deference this Court applies to a district court's application of the Guidelines to the facts, *see Kosinski*, 480 F.3d at 774, we hold that the sentence imposed by the district court was substantively reasonable.

## CONCLUSION

For the reasons stated above, we **AFFIRM** Defendant's sentence.