NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0402n.06

No. 09-1234

**FILED**
**Jul 08, 2010**
LEONARD GREEN, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

ORLANDO BELL,

     Defendant-Appellant.

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MICHIGAN

_____/

OPINION

BEFORE:    CLAY, ROGERS, and COOK, Circuit Judges.

     **CLAY, Circuit Judge.** Defendant Orlando Bell appeals his sentence as both procedurally and substantively unreasonable following his conviction for conspiracy to distribute cocaine and cocaine base in violation of 21 U.S.C. §§ 846 and 841(a)(1). Defendant is the recipient of a heart transplant and has a shortened life expectancy that makes it likely he will die before being released from prison. For the following reasons, the district court's sentence is **AFFIRMED**.

**BACKGROUND**

**A.**    **Procedural History**

     A seven-count indictment was issued against Defendant and four co-conspirators on May 22, 2008. Count one of the indictment charged Defendant with participating in a conspiracy to distribute more than five kilograms of cocaine and more than 50 grams of cocaine base in violation of 21 U.S.C. § 846. Defendant pleaded guilty to Count One on October 6, 2008. Defendant faced a

mandatory minimum of 120 months based on his violation of 21 U.S.C. § 841(b)(1)(A). The presentence report prepared in advance of the sentencing hearing on February 10, 2009, calculated a guidelines range of 188 to 235 months. The district court reduced the guidelines computation by two levels based on a crack cocaine ratio of 20:1 rather than the 33:1 ratio the amended sentencing guidelines uses for this quantity of drugs. The adjusted guidelines range was 151 to 188 months. Defendant was sentenced to a term of 151 months. This timely appeal followed.

**B.      Factual History**

Police officers executed a search warrant on July 3, 2007 at Defendant's residence in Battle Creek, Michigan and seized $22,517, including a $20 bill that had been used by a confidential informant in a previous crack transaction. The officers found a key ring that Defendant admitted was his. The key opened the door of a different house in Battle Creek where officers found crack cocaine, as well as cocaine residue and marijuana. Subsequently, on January 9, 2008, police officers observed a car that stopped at a house where Defendant was seen inside. The officers stopped the car and found 195 grams of crack cocaine. The passengers in the vehicle stated that they had received the crack from Defendant and a co-conspirator. A search warrant was executed on the address, and 1,232.6 grams of crack cocaine, 447 grams of powder cocaine, $33,530 in currency, and various other drug paraphernalia were found. Defendant denied his involvement in the drugs at the January 9, 2008 search but admitted to being at the house.

Defendant pleaded guilty to participating in a wide-ranging drug distribution ring. He had been indicted along with four other co-defendants. The parties stipulated that Defendant was responsible for 1.5 to 4.5 kilograms of a mixture or substance containing cocaine base, calling for a base offense level of 36.

In preparation for sentencing, a number of negative facts about Defendant were disclosed. Defendant had not had gainful employment in more than 11 years and, at the time of his arrest, was receiving disability social security based on medical conditions discussed below. Despite the medical conditions, Defendant was able to actively participate in a drug-dealing conspiracy. In addition, Defendant, who was 33-years-old at the time of sentencing, had 11 different children. While he produced letters calling him a good father, he owed more than $77,000 in child support.

The issues in this case primarily revolve around Defendant's arguments for a lesser sentence based on his medical history. Defendant had a heart transplant in 2004, but he has had rejection issues. He submitted testimony from a Dr. Aaronson that, at the time of sentencing, Defendant's "likelihood of survival over the next five years is less than 50%." (R. 121, Ex. A). Dr. Aaronson also stated that the average life expectancy for a heart transplant recipient who survives the first year is 12 years. This medical evidence was uncontroverted. The government did not dispute the seriousness of Defendant's medical condition. At the sentencing hearing, the prosecutor stated: "When a defendant is able to produce a doctor who I have no reason to challenge and claimed that the average, and that's what I'm most impressed with, he didn't say the defendant has five years to live, or the defendant has seven, he says people with his medical condition generally on average live 12 years, give or take. I would assume that the defendant has a reduced life expectancy; just makes logical sense to me." (Sentencing Tr. 11). Defendant has other serious medical problems, including renal failure and Stanford Grade III transplant vasculopathy as complications of the transplant.

The district court found the statistical evidence to be inconclusive. In response to the government's own assertion that Defendant's life expectancy is reduced, the district court stated:

> On a statistical level, perhaps that's true. But . . . my own view is that the defendant's life expectancy is more in peril from his lifestyle than it is from his medical condition. And anybody who continues with a lifestyle such as the one the defendant has been living since his heart transplant . . . does not strike a cord, at least with this Court, that suggest a departure is necessarily indicated from the fact that he's got somebody else's heart beating in his chest. I really just don't buy it.

(Sentencing Tr. 12-13). The district court rejected Defendant's request for a variance or a departure and sentenced him to 151 months, the low-end of the adjusted guidelines range.

## DISCUSSION

### A.    Procedural Reasonableness

On appeal, sentences are reviewed for reasonableness under an abuse of discretion standard. *United States v. Booker*, 543 U.S. 220, 260-61 (2005); *United States v. Sedore*, 512 F.3d 819, 822 (6th Cir. 2008). The reasonableness determination has both a procedural and substantive component. *United States v. Jones*, 445 F.3d 865, 869 (6th Cir. 2006). A sentence is procedurally unreasonable if the district court fails to calculate the Guidelines range, treats the Guidelines as mandatory, fails to consider the 18 U.S.C. § 3553(a) factors, selects a sentence based on clearly erroneous facts, or fails to adequately explain the chosen sentence. *United States v. Brown*, 579 F.3d 672, 677 (6th Cir. 2009) (quoting *Gall v. United States*, 552 U.S. 38, 52 (2007)).

Defendant's primary argument to the district court was that his life-expectancy was only five years and the district court should therefore grant a departure under U.S.S.G. §§ 5H1.1 and 5H1.4 or a variance. On Defendant's procedural unreasonableness challenge, he argues that the district court explained its decision not to grant a departure but never discussed Defendant's life-expectancy in deciding not to grant a variance. Defendant's argument is simply incorrect, as the district court clearly discussed why Defendant's short life-expectancy did not lead it to grant a variance.

4

"When a defendant raises a particular, nonfrivolous argument in seeking a lower sentence, the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it." *United States v. Wallace*, 597 F.3d 794, 803 (6th Cir. 2010) (citations and quotations omitted). Defendant's life expectancy is assuredly a nonfrivolous argument, but the "record makes clear that the sentencing judge listened to each argument, considered the supporting evidence, was fully aware of the defendant's circumstances and took them into account in sentencing him." *Id.* at 804 (citations and quotations omitted).

Both parties agree that the district judge gave her reasons for rejecting Defendant's identical argument in the context of a departure. A departure is based on specific determinations made pursuant to the sentencing guidelines themselves. A variance is made pursuant to the § 3553(a) factors. *See United States v. Vowell*, 516 F.3d 503, 511 (6th Cir. 2008). At the sentencing hearing, the district judge specifically rejected the motion for a departure relatively early in the proceedings. "I do not at this point think a departure under the guidelines is justified based on 5H1.1 or 5H1.4, and that's overruled as well." (Sentencing Tr. 13). She then considered additional arguments and explained her sentence in light of the § 3553(a) factors. By definition, a thorough consideration of the § 3553(a) factors, including an acknowledgment that they are not binding, is a consideration of a variance argument. In that discussion, the district court clearly considered Defendant's medical history.

> In a sense, I think the incarceration will be something of a life saver for him, as opposed to a death sentence. Because it will take him out of the very dangerous circumstances he has been in for years. If he is, unlike what he told the probation officer, if he does have a drug problem, that has got to be a significant factor in his health prospects going forward, and so incarceration I would hope would have the effect of taking that out of the picture.

> I think the statistical evidence provided by the defendant's physician does not really provide a preponderance of evidence that incarceration will have such dire consequences. I think it's pretty clear that these kinds of statistics are based on large numbers of individuals, some of whom are at one end of the scale, and others of whom are at the other end. And I don't think there's any way to anticipate how long Mr. Bell will live as a consequence of his surgery. Nor is there, I don't think, any evidence really to suggest that incarceration is going to have a significant effect on that.

(Sentencing Tr. 30-31). This discussion by the district court is clearly responsive to Defendant's argument that a diminished life expectancy should lead to a downward variance. At oral argument, Defendant's counsel highlighted the district court's use of the term "preponderance of evidence," which is the standard for the departure determination. The use of the term "preponderance," however, does not mean that the district court did not understand its freedom to vary, and the full context indicates that the district court believed that incarceration would not lower Defendant's life expectancy and may actually increase it.

In discussing the sentence it would impose, the district court also referenced the specific sections of the sentencing guidelines allowing for departures. The district court was obviously not bound by those requirements in considering whether to give Defendant a variance. However, as the district judge correctly stated: "Well, the advisory guidelines are just that, they are advisory. I'm not compelled to follow them, but I am required to at least consult them and give them consideration when reaching a decision on sentencing." (Sentencing Tr. 25). The standards for a departure are part of the sentencing guidelines, so her consideration of those standards in discussing the requested variance reflect only the requirement that she give the guidelines "consideration when reaching a decision on sentencing." While confusion between the standards for a departure and a variance could conceivably render a sentence procedurally unreasonable, the sentencing transcript in this case

6

makes clear that the district court understood that it could give a variance based on Defendant's infirmity, and the district court sufficiently explained why it declined to do so. The district court acknowledged that "it may well be that a below guidelines sentence here . . . is not unreasonable," but nonetheless determined that a sentence at the bottom of the recalculated guidelines range was appropriate.

Defendant's assertion that the district court never considered his life expectancy in the context of his request for a variance is therefore incorrect. The district court was undoubtedly aware of the argument and acknowledged the impact Defendant's health had on the final sentence chosen. In *Rita v. United States*, 551 U.S. 338 (2007), the defendant had also requested a sentence below the guidelines range based on his health. The district court's explanation of its sentence, while brief, was found to be "legally sufficient." *Id*. at 358. "The record makes clear that the sentencing judge listened to each argument. The judge considered the supporting evidence. The judge was fully aware of defendant's various physical ailments and imposed a sentence that takes them into account." *Id*. Apart from this somewhat technical argument, nothing about the thoroughness of the district court's explanation could be questioned. The district court detailed its views on the medical evidence, discussed its philosophy regarding the § 3553(a) factors and gave an individualized assessment of how it weighed this defendant's crime and personal characteristics.

**B.      Substantive Reasonableness**

Defendant contends that his sentence is substantively unreasonable because it is "greater than necessary" to achieve the goals of sentencing. *See* 18 U.S.C. § 3553(a). Defendant argues that since he has a life expectancy of only five years, the district court's sentence of more than 12 years means Defendant's sentence is effectively two life sentences. A sentence is substantively unreasonable if

the court selects the sentence arbitrarily, bases the sentence on impermissible factors, or gives an unreasonable amount of weight to any pertinent factor. *United States v. Brown*, 579 F.3d 672, 687 (6th Cir. 2009). A sentence within the sentencing guidelines is presumptively reasonable. *United States v. Smith*, 474 F.3d 888, 892 (6th Cir. 2007).[1]

Defendant's substantive reasonableness argument boils down to his contention that the 151 month sentence is "greater than necessary." Defendant does not point to any case where this Court has found substantively unreasonable a sentence at the bottom of the guidelines range nor any case where a presumptive life sentence was deemed substantively unreasonable. Defendant obviously offers a compelling case that this 151 month sentence is effectively a life sentence, but no rule of law prevents a district court from imposing such a sentence if properly justified. Furthermore, Defendant was subject to a ten-year mandatory minimum pursuant to 21 U.S.C. § 841(b)(1)(A). Therefore, no matter what sentence the district court imposed, it would have been "two life sentences."

In this case, the district court explained at length the rationale for the sentence it imposed and emphasized repeatedly that Defendant's actions and history were very troubling. Defendant cannot argue that his criminal actions are overstated by the sentencing guidelines. He was involved in a large-scale drug distribution ring that, combined with his criminal history, called for a guidelines

---

[1]The district court, in its discretion, lowered the applicable guidelines range based on its own decision to apply a ratio of 20:1 for crack cocaine. This decision was made pursuant to *Kimbrough v. United States*, 552 U.S. 85 (2007) and *Spears v. United States*, 129 S.Ct. 840, 843 (2009) ("A sentencing judge who is given the power to reject the disparity created by the crack-to-powder ration must also possess the power to apply a different ratio, which, in his judgment, corrects the disparity.). This determination means that the district court has decided to "vary categorically from the crack-cocaine Guidelines." *Id*. at 844. Therefore, Defendant arguably received a below-guidelines sentence. We need not flesh out the impact on the presumptive reasonableness of this sentence based on an altered guidelines range because Defendant's sentence is substantively reasonable whether the 151-month sentence is within the guidelines or below the guidelines.

range of at least 188 months. Defendant collected social security for his disability but was able to actively work as a drug dealer, including cooking crack cocaine and distributing the drugs himself. After being released on bond, he violated the terms of his release by gambling and possessing cocaine and marijuana. Furthermore, Defendant had eleven children and owed more than $77,000 in child support, even though he admitted that he earned as much as $1,500 a week from selling drugs.

Defendant's sole argument is that since his life expectancy indicates he will die during this jail sentence, it was unreasonable to give him so long a sentence. First, Defendant was required to spend at least ten years in jail based on the mandatory minimum, more than twice as long as his life expectancy. Furthermore, the district judge carefully considered Defendant's evidence and decided to reject it. The district court found that while Defendant's expert states that Defendant has less than a 50% chance of living more than five years, the district court had no way to know how long he would actually live. The district court then theorized that placement in prison would actually be beneficial to Defendant's life expectancy given the reckless life, including drug use, that Defendant lived before he was arrested. The district court found that "my own view is that the defendant's life expectancy is more in peril from his lifestyle than it is from his medical condition." (Sentencing Tr. 12).

In addition, the district court emphasized that Defendant was not that infirm. Even after his heart transplant Defendant was "fully capable to take care of children, apparently on a daily basis while their mothers work, presumably at legitimate employment. He's not infirm to the extent that he can't cook powder cocaine into crack or to sell it, trade it, trade in it." (Sentencing Tr. 33).

9

Therefore, the district court rationalized that Defendant's current health was not a reason for a lower sentence.

The question before this Court is not whether we agree with the district court's sentence. *See United States v. Hairston*, 502 F.3d 378, 386 (6th Cir. 2007) (noting that "we must continue to be wary of substituting our judgment for that of the district court"). The district court was well aware of Defendant's condition and reasonably found that Defendant was not entitled to a reduction below the guidelines range based on his medical condition. Defendant's entire claim is based on the premise that he will likely die in jail, but no case holds that issuing such a sentence is substantively unreasonable. Without support in the case law, Defendant relies almost exclusively on the requirement that the district court impose a sentence "not greater than necessary." 18 U.S.C. § 3553(a). Defendant, however, has committed serious drug crimes, and the fact that he claims he is statistically likely to die in jail does not render his sentence substantively unreasonable. The district court gave a sentence at the bottom of an adjusted guidelines range, and Defendant has failed to offer any recognized impropriety with this sentence that renders it substantively unreasonable.

## CONCLUSION

For the foregoing reasons, the district court's sentence is **AFFIRMED**.