**NOT RECOMMENDED FOR PUBLICATION**
File Name: 17a0551n.06

No. 15-5018

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

Oct 03, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| RANDY PARKS SWEENEY, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF TENNESSEE |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: COLE, Chief Judge; ROGERS and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

A jury convicted defendant Randy Parks Sweeney of one count of attempting to coerce a minor to engage in sexually explicit conduct in violation of 18 U.S.C. § 2251(e), and one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The district court classified defendant as an armed career criminal and sentenced him to 195 months' imprisonment. In this direct appeal, Sweeney claims the district court should have suppressed certain evidence and ordered a *Franks* hearing to challenge a search warrant, contends there was insufficient evidence to sustain his § 2251(e) conviction, and contests his classification as an armed career criminal. We affirm Sweeney's convictions, vacate his sentence, and remand for resentencing.

I.

In 2011, defendant began a conversation with a 13-year-old girl via Facebook's messaging function. The conversation quickly turned sexual, with defendant telling the minor to engage in certain sex acts and then describing his desire to engage in sex acts with her. He also expressly requested images of the girl: "you were supposed to take a pic for me . . . you know what i want to see . . . without the shorts."

The girl's mother discovered the messages and contacted local police in Georgia. Detective Tammy Davis of the Fort Oglethorpe Police Department went to the victim's home, reviewed and downloaded the Facebook messages, and interviewed the victim. During the interview, the victim said she had met defendant once, but had never sent him nude photographs.

Detective Davis detailed her investigation in an "incident report," which she then faxed to a Georgia magistrate to begin the process of obtaining an arrest warrant. She then personally appeared before the magistrate and swore under oath that, to the best of her knowledge, on December 26, 2011, Sweeney had committed "computer pornography" in violation of Ga. Code Ann. § 16-12-100. The magistrate, in turn, prepared and issued an arrest warrant and an accompanying affidavit. Neither the warrant nor the affidavit expressly incorporated Detective Davis's incident report.

After obtaining the arrest warrant, Detective Davis contacted the East Ridge Police Department in Tennessee for assistance in obtaining a search warrant for defendant's home. East Ridge Detective Josh Creel reviewed defendant's criminal history and viewed defendant's public Facebook page. Detective Creel learned Sweeney had multiple felony convictions, and his review of Sweeney's Facebook page revealed several photographs of guns, one of which appeared to be taken in defendant's bedroom.

Detective Creel prepared an affidavit in support of a search warrant. It referred to Detective Davis's incident report, stating:

> The report detailed sexually explicit messages exchanged between the person of Randy P Sweeney (49 years of age) and the 13 year old minor victim. The messages, exchanged via Facebook, request sexual acts be performed by the child, and that the child send nude photographs via email.

But the affidavit left out that the victim had said she never sent defendant nude photographs. A Tennessee judge reviewed the affidavit and issued a search warrant, authorizing the seizure of Sweeney's computer equipment.

Authorities executed the search warrant on February 8, 2012. Upon entering defendant's bedroom, law enforcement found a sawed-off shotgun sticking up beside the bed and two more guns in a chest at the foot of the bed. Knowing defendant was a felon who could not possess firearms, officers seized the guns in addition to Sweeney's computer equipment.

Detective Creel arrested Sweeney pursuant to the Georgia arrest warrant. Sweeney waived his *Miranda* rights, admitted he knew the victim's age, and admitted possessing the shotgun.

A federal grand jury charged defendant with attempting to coerce a minor to engage in sexually explicit conduct, in violation of 18 U.S.C. § 2251(e) (count one); attempting to entice a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b) (count two); and possessing a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1) (count three). Defendant moved to suppress the evidence seized from his home, arguing the Tennessee search warrant was invalid because the search-warrant affidavit omitted the victim's statement that she had never sent him nude photographs. He also moved to suppress his statements to the detectives, arguing the Georgia arrest warrant was invalid because the accompanying affidavit itself failed to outline

a basis for probable cause and there was no evidence the Georgia magistrate had attached Davis's incident report to the affidavit. The district court denied the motion to suppress.

At trial, the district court granted defendant's motion for acquittal on count two (attempting to entice a minor to engage in sexual activity). But it denied Sweeney's motion with respect to count one, rejecting his argument that the request for a photograph "without the shorts" was not a request for the victim to engage in sexually explicit conduct. The jury then convicted defendant on counts one and three.

At sentencing, the district court concluded defendant was an armed career criminal under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), in light of his seven prior Tennessee convictions for aggravated burglary, one prior conviction for armed robbery, and one prior conviction for attempted aggravated robbery. Defendant objected to this classification, arguing, among other things, that the Tennessee statute criminalizing aggravated burglary was broader than the definition of "generic burglary" in *Taylor v. United States*, 495 U.S. 575 (1990). He also filed a motion for a downward variance. The district court overruled defendant's objection, but granted his motion, and sentenced him to 195 months' imprisonment.

Defendant timely appealed, raising four issues on appeal: (1) the district court erred by denying his motion to suppress evidence collected from a search of his home, and by denying his request for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), to challenge the validity of the warrant; (2) the district court erred by denying his motion to suppress statements after his arrest; (3) the evidence submitted at trial was insufficient to prove that he attempted to coerce a minor to engage in sexually explicit conduct; and (4) the district court erred in classifying him as an armed career criminal.

II.

Defendant first argues the district court erred when it denied his motion to suppress evidence from the search of his home and denied him a *Franks* hearing. We review the district court's findings of fact for clear error and its conclusions of law de novo. *United States v. Rose*, 714 F.3d 362, 366 (6th Cir. 2013). We also consider the evidence in the light most favorable to the government. *United States v. Beauchamp*, 659 F.3d 560, 565–66 (6th Cir. 2011).

If police obtain a warrant using an affidavit containing false statements or a material omission, *Franks* gives a defendant the right to obtain an evidentiary hearing to challenge the warrant's validity. *Rose*, 714 F.3d at 370. To receive a *Franks* hearing, a defendant must (1) make "a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement or material omission in the affidavit" and (2) prove "that the false statement or material omission is necessary to the probable cause finding in the affidavit." *Id.*

Sweeney claims Detective Creel's affidavit contained a material omission—that the minor girl stated she never sent nude pictures to Sweeney. On this basis, he claims he met his burden to obtain a *Franks* hearing. Because the affidavit supported a finding of probable cause even had it contained this statement, we disagree.

A warrant is valid when the supporting affidavit provides a "substantial basis" for the issuing magistrate to believe "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *United States v. King*, 227 F.3d 732, 742 (6th Cir. 2000). In reviewing the sufficiency of a supporting affidavit, we consider the "totality of the circumstances." *United States v. Allen*, 211 F.3d 970, 972 (6th Cir. 2000) (en banc) (citing *Gates*, 462 U.S. at 230–32). We are required to give "great

deference" to the issuing magistrate's probable cause determination, *United States v. Smith*, 510 F.3d 641, 652 (6th Cir. 2007), which requires the magistrate to "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . probable cause exists." *King*, 227 F.3d at 740 (quotations omitted). Indeed, an "issuing magistrate's discretion should only be reversed if it was arbitrarily exercised." *Allen*, 211 F.3d at 973.

Detective Creel's affidavit sought, among other things, evidence in connection to Sweeney's violation of Georgia Code § 16-6-5(a). That statute provides:

> A person commits the offense of enticing a child for indecent purposes when he or she solicits, entices, or takes any child under the age of 16 years to any place whatsoever for the purpose of child molestation or indecent acts.

In support, Detective Creel's affidavit stated Sweeney met the victim at least once and had sent her sexually explicit messages, including requests that she perform specific sexual acts and send him nude photographs of herself. An in-person meeting, a prolonged sexual dialogue, and specific sexual requests—when viewed together—are enough to conclude there was a fair probability of uncovering evidence Sweeney violated Georgia Code § 16-6-5(a) by soliciting the victim to a place for the purpose of committing indecent acts. Given this independent basis for searching Sweeney's home, the district court did not err in denying the suppression motion and the request for a *Franks* hearing.

### III.

Sweeney next challenges the district court's denial of his motion to suppress statements he made after his arrest. He argues the Georgia arrest warrant was invalid because the corresponding affidavit lacked factual allegations from which the magistrate could conclude Sweeney had committed a crime. The parties dispute whether the magistrate had Detective

Davis's incident report in his hand at the time he issued the warrant. But we need not resolve this dispute because Sweeney's arrest comported with the Fourth Amendment regardless of the validity of the Georgia arrest warrant.

An arrest is reasonable so long as the officer had probable cause—"even if the arrest warrant is invalid." *United States v. Fachini*, 466 F.2d 53, 57 (6th Cir. 1972); *see also Graves v. Mahoning Cty.*, 821 F.3d 772, 775–76 (2016) (noting "[t]he Fourth Amendment prohibits 'unreasonable searches and seizures,' not warrantless ones" and "arrests are 'reasonable' when the officer had 'probable cause to believe that a criminal offense has been or is being committed'"). Thus, we must ask whether, notwithstanding the absence of a valid warrant, "the arresting officers were justified in their belief that [Sweeney] had probably committed or was committing a crime." *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988). They were.

Officers arrested defendant after executing a valid search warrant, searching his home, and finding firearms in his bedroom—at least one of which (a sawed-off shotgun) officers immediately recognized was not of legal length. The officers therefore had probable cause to arrest Sweeney for possessing an illegal firearm. *See* Tenn. Code Ann. §§ 39-17-1301(15), 39-17-1302(a)(4). And the officers knew of Sweeney's prior felony conviction for armed robbery, meaning they also had probable cause to arrest him for being in possession of a firearm as a felon with a conviction for the use or attempted use of force, violence, or a deadly weapon. *See* Tenn. Code Ann. § 39-17-1307(b)(1)(A). Thus, the district court did not err in denying his motion to suppress statements made after his arrest.

IV.

Defendant also argues the district court erred in denying his motion pursuant to Federal Rule of Criminal Procedure 29 for a judgment of acquittal with respect to count one. In

reviewing the district court's denial of defendant's Rule 29 motion, "we review his motion de novo and examine the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Campbell*, 549 F.3d 364, 374 (6th Cir. 2008). "We will reverse a judgment based on a finding of insufficient evidence only if the judgment is not supported by substantial and competent evidence upon the record as a whole." *Id.* Further, all reasonable inferences must be made to support the verdict. *Id.*

18 U.S.C. § 2251(e) criminalizes an attempt to employ, use, persuade, induce, entice, or coerce a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct. "Sexually explicit conduct" includes lascivious exhibition of the genitals or pubic area of any person. 18 U. S. C. § 2256(2)(A). We have adopted a test with six factors—known as the *Dost* factors—for determining whether a given image or video is "lascivious":

- Whether the focal point of the visual depiction is on the child's genitalia or pubic area;
- Whether the setting of the visual depiction is sexually suggestive, *i.e.*, in a place or pose generally associated with sexual activity;
- Whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;
- Whether the child is fully or partially clothed, or nude;
- Whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; and
- Whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

*United States v. Brown*, 579 F.3d 672, 680 (6th Cir. 2009) (quoting *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986)). This list is not exhaustive, and "an image need not satisfy every factor to be deemed lascivious." *Brown*, 579 F.3d at 680 (internal quotations omitted).

Thus, we must determine whether any rational jury could conclude that (1) Sweeney attempted to employ, use, persuade, or coerce the victim to take part in sexually explicit conduct for the purpose of producing a visual depiction of such conduct; (2) the victim was a minor at the time of the offense; and (3) the visual depiction would have been produced using materials that had been mailed or transported in interstate or foreign commerce. *See* 18 U.S.C. § 2251(a).

Defendant challenges only whether the evidence the government presented at trial was sufficient to support the first element. Sweeney submits he never asked the victim to pose for a photograph of sexual activity, did not ask for a video of sexual activity, and did not ask her to engage in sexual activity for him to see. Sweeney even suggests the victim is at fault, noting she had "offered to send photos of 'her boobs.'" And he contends his request for the victim to send a photo of herself "without the shorts" must have meant "in her underwear" and not "naked" because, according to the victim's testimony at trial, that is the interpretation she gave to the request. In fact, Sweeney tells us "[t]he Facebook messages speak for themselves."

Indeed they do; they show escalating-in-scale sexualized messages prior to and after the "without the shorts" request. In several of these exchanges, Sweeney encouraged the victim to engage in sexual acts and expressed his desire to join in similar acts with her.

Viewing the facts in the light most favorable to the government, we conclude that there was sufficient evidence from which a rational jury could find defendant guilty on count one. Given the broader context of the defendant's conversation with the victim, a rational jury could conclude that a picture "without the shorts" would make the victim's pubic area the focal point of the visual depiction; would depict the victim in inappropriate attire considering her age; would depict the victim partially clothed, or nude; and would be intended to elicit a sexual response in

the viewer. Therefore, a rational jury could find that Sweeney attempted to persuade the victim to produce a visual depiction of a lascivious exhibition of her pubic area.

## V.

Finally, Sweeney argues the district court improperly classified him as an armed career criminal on the basis of his seven convictions for aggravated burglary under Tennessee law. At the time of his sentencing, under our decision in *United States v. Nance*, a Tennessee conviction for aggravated burglary constituted a violent felony for purposes of the ACCA. 481 F.3d 882 (6th Cir. 2007). But in *United States v. Stitt*, we overruled *Nance* and held that a conviction for Tennessee aggravated burglary is not a violent felony under the ACCA. 860 F.3d 854, 860–61 (6th Cir. 2017) (en banc). In light of our decision in *Stitt*, we vacate Sweeney's sentence and remand for resentencing.

## VI.

For these reasons, we affirm Sweeney's convictions, vacate his sentence, and remand for resentencing.