RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0036p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

UNITED STATES OF AMERICA,

                *Plaintiff-Appellee*,

    *v*.

BERNHARD JAKITS,

                *Defendant-Appellant*.

> No. 23-3870

─────────────

Appeal from the United States District Court for the Southern District of Ohio at Columbus.
No. 2:22-cr-00194-1—Edmund A. Sargus, Jr., District Judge.

Argued: October 31, 2024

Decided and Filed: February 20, 2025

Before: COLE, MATHIS, and BLOOMEKATZ, Circuit Judges.

─────────────

## COUNSEL

**ARGUED:** Tillman J. Finley, MARINO FINLEY LLP, Washington, D.C., for Appellant. Kevin Koller, UNITED STATES ATTORNEY'S OFFICE, Cincinnati, Ohio, for Appellee. **ON BRIEF:** Tillman J. Finley, Daniel Marino, MARINO FINLEY LLP, Washington, D.C., for Appellant. Kevin Koller, UNITED STATES ATTORNEY'S OFFICE, Cincinnati, Ohio, for Appellee.

─────────────

## OPINION

─────────────

COLE, Circuit Judge. A jury convicted Bernhard Jakits of eight counts of child-exploitation-related crimes. On appeal, Jakits argues that there is insufficient evidence to support the convictions on all eight counts, that the district court incorrectly instructed the jury

on elements of the charged offenses, and that the district court excluded evidence in violation of his constitutional rights. We affirm his convictions on all eight counts.

I.

In late 2018, Bernhard Jakits began corresponding online with "Ashley" through a prostitution website. At the time, Jakits lived in Maryland, and Ashley lived in Martins Ferry, Ohio. Pregnant and addicted to drugs, Ashley performed sex acts for Jakits on live videocalls for money.

Ashley has two teenage daughters: fifteen-year-old "Jae" and thirteen-year-old "Nik."[1] In late December 2018, Ashley reported to a local jail and began a period of incarceration. She left her phone at the apartment where Jae, Nik, and their grandmother were living. Jae knew that Ashley engaged in sex work to make money. She also knew that Jakits was one of the men with whom her mother corresponded, though she knew him only under the moniker in her mother's phone: "Mr. Wow."

In early January 2019, while her mother was in jail, Jae heard her mother's phone ring. Jae picked up the phone and found a message from "Mr. Wow." Jae responded, letting him know that she was Ashley's daughter and that her mother was in jail. Jakits and Jae began texting.

According to Jae, Jakits eventually asked whether Jae "wanted to make some extra cash" and offered her $500 for nude pictures. (Sealed Trial Tr., R. 195, PageID 2616–17.) At first, Jae sent him photos she had previously taken of herself wearing underwear, but Jakits was not satisfied. So, Jae took and sent him nude photographs. Jakits requested various poses: a photo of Jae with her school transcript, to prove her age and her identity, and a photo of her "ben[t] over something." (*Id.* at PageID 2642-44, 2653.) Jae sent Jakits a photo of her posed "bent over a bed." (*Id.* at 2653.) Jakits sent the money to Jae.

---

[1]"Jae" and "Nik" were nicknames used at trial and are now used on appeal to protect the minors' identities. Additionally, the stated ages were the minors' ages at the time of the events at issue.

On January 14, Jakits texted Jae and asked whether Nik "want[ed] to earn $500." (Government Ex. 2B, R. 226, PageID 4225.)  Between increasingly insistent texts that Jae solicit her sister, Jakits informed Jae that he had sent Ashley "more money to make her stay [in jail] a little more pleasant."  (*Id.* at PageID 4228, 4231.)  Jakits said he "was just trying to help make [Jae's] life a little better" and told Jae that once Ashley was released, he was "going to help [Ashley] to get her own nice place" and fly them out "for a holiday to [his] oceanfront California home."  (*Id.* at PageID 4229.)  With Jae slow to respond, Jakits increased his offer: $1,000 for Jae and $500 for Nik.  Both girls agreed.

First, Jakits asked for a photograph of Nik.  Jae sent him clothed photos.  After asking Jae to promise that the exchange remain their "secret," Jakits requested "one naked picture" of Nik. (*Id.* at PageID 4236.)  Nik took the photo, and Jae sent it to Jakits.  Jakits asked that Nik "also show her school transcript."  When Jae told him that Nik did not have a transcript yet, Jakits asked for a photo of Nik holding something else with her name on it.

After receiving the photos, Jakits requested a live videocall, where he said he would ask Nik to "model and do certain things" and to take "a couple of pictures that [he] want[ed] her to take of how [he] want[ed] it."  (*Id.* at PageID 4240.)  He promised it would be "[n]othing nasty." (*Id.*)  When Jae asked him instead to send the desired poses over text, Jakits said he did not want "to write/text it."  (*Id.* at PageID 4243–44.)  And when he failed to persuade Jae by reminding her of the value of his offer, he reiterated that he wanted "[n]othing nasty" and requested a "close-up of both of [their] bottoms."  (*Id.* at PageID 4250.)  Jae expressed the girls' discomfort and stopped responding.  Still, he tried to change her mind: he offered $1,000 for each sister, a car, a scholarship, then $2,000 for each sister, and two round trip airline tickets to Jacksonville plus $1,000 of spending money.  But Jae never responded.

Nik informed Ashley on January 10, over a recorded jail telephone call, that Jakits had asked for a "bra" or "underwear picture" from Jae and Nik.  (Sealed Jail Telephone Calls Tr., R. 152, PageID 1862–64.)  Ashley told Nik to "promise" to "never feel that tempted" by the money. (*Id.* at PageID 1864.)  Later, Ashley raised her concerns with the local sheriff's office.  Law enforcement uncovered the communications between Jakits and Jae and photographs of Jae and

Nik, including several nude and semi-nude photos. They also recovered images and videos of Ashley.

The investigation also revealed text messages between Jakits and another man. Jakits had sent the man several photos of Jae, including a photo of her genitals, though he told the man that Jae was eighteen. In the texts, both men discussed Jae in sexually suggestive terms. For example, after sending the man two photos of Jae, Jakits texted, "Money doesn't buy happiness, but it can and will buy this." (Government Ex. 6B, R. 226, PageID 4266–67.)

A grand jury indicted Jakits on eight counts on October 11, 2022. The original indictment was superseded on January 17, 2023, by a nine-count indictment. Counts One (regarding Jae) and Two (regarding Nik) alleged Jakits induced the minors to engage in sexually explicit conduct for the purpose of producing digital image files that depicted the lascivious exhibition of the minors' genitals and pubic area, in violation of 18 U.S.C. §§ 2251(a) and (e). Counts Three (regarding Jae) and Four (regarding Nik) alleged Jakits attempted to induce the minors to engage in sexually explicit conduct during a live videocall for the purpose of producing a visual depiction of such conduct, in violation of 18 U.S.C. §§ 2251(a) and (e). Counts Five (regarding Jae) and Six (regarding Nik) alleged Jakits attempted to coerce or entice the minors to engage in sexual activity using a means or facility of interstate commerce, in violation of 18 U.S.C. § 2422(b). Count Seven alleged Jakits made an interstate notice seeking child pornography by sending statements via cell phone and the internet to Jae seeking such content, in violation of 18 U.S.C. §§ 2251(d)(1)(B) and (e). Count Eight alleged Jakits received child pornography in the form of digital image files depicting Jae engaged in the lascivious exhibition of the genitals and pubic area, in violation of 18 U.S.C. §§ 2252(a)(2) and (b)(1). Finally, Count Nine alleged that Jakits knowingly received, via an interactive computer service, an obscene live-streamed visual depiction of Ashley, in violation of 18 U.S.C. § 1462(a).

Before trial, the district court granted Jakits's motion to sever Count Nine from the other charges. Relevant to this appeal, pursuant to Federal Rules of Evidence 403 and 404(b), the district court also granted the government's motion to exclude evidence or reference to any minors other than Jae and Nik, relating specifically to evidence that another teenager may have taken sexually suggestive images of herself to obtain money from Jakits on behalf of Ashley or

Jae. The district court also granted a separate government motion to exclude, pursuant to Federal Rule of Evidence 412, any evidence related to Jae's and Nik's sexual activities or predispositions involving any individual other than Jakits, relating primarily to certain comments in Ashley's recorded jail calls about Nik and Jae receiving money from other men. Jakits opposed both motions, arguing that excluding such evidence—which he sought to use to show that he was the target of a wider scheme by Ashley and the minors to obtain money from and blackmail men—would violate his rights under the Sixth Amendment's Confrontation Clause.

A jury trial on the first eight counts proceeded. The jury convicted Jakits of all eight counts apart from Count Two, finding him guilty only of Count Two's lesser-included attempt charge. Jakits moved for a judgment of acquittal. The district court denied the motion and sentenced Jakits to a 216-month prison term.

On appeal, as at trial, Jakits does not dispute his communications with Jae, that he received the photos of Jae and Nik, or that he requested a live videocall with Jae and Nik. He maintains, however, that his conduct was legal. And he argues that the district court improperly instructed the jury about elements of the offenses and improperly excluded evidence. He asks this court to reverse the convictions on all eight counts and direct the district court to enter a judgment of acquittal or, in the alternative, remand for a new trial.

II.

We review challenges to the sufficiency of the evidence de novo. *United States v. Farrad,* 895 F.3d 859, 871 (6th Cir. 2018). "To test the sufficiency of the evidence, we 'must determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Crump*, 65 F.4th 287, 294 (6th Cir. 2023) (quoting *United States v. Washington*, 702 F.3d 886, 891 (6th Cir. 2012)). In doing so, we view the evidence in the light most favorable to the government and do not "'weigh the evidence, assess the credibility of the witnesses, or substitute our judgment for that of the jury.'" *United States v. Hendricks*, 950 F.3d 348, 352 (6th Cir. 2020) (quoting *United States v. Wright*, 16 F.3d 1429, 1440 (6th Cir. 1994)). Defendants challenging a jury verdict thus face an "uphill climb," as we

must affirm "if any rational juror could have voted to convict." *United States v. Latimer*, 16 F.4th 222, 225 (6th Cir. 2021).

Jakits argues that insufficient evidence supports all eight counts, contending that (A) the images and video he received and sought from the victims did not depict the minors engaging in "sexually explicit conduct" in violation of 18 U.S.C. §§ 2251(a) and (e); (B) he did not attempt to have the minors engage in "sexual activity" in the requested live videocall, in violation of 18 U.S.C. § 2242(b); and (C) his text messages to Jae did not qualify as notices seeking child pornography in violation of 18 U.S.C. § 2251(d).

A.

To obtain a conviction under 18 U.S.C. § 2251(a), the government must show that, in or affecting interstate commerce, the defendant "employed, used, persuaded, induced, enticed, or coerced any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct[.]" 18 U.S.C. § 2251(a) (verb tense altered). Section 2251(e) criminalizes the violation of or attempted violation of § 2251(a). The statutory definition of "sexually explicit conduct" is actual or simulated "(i) sexual intercourse []; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the anus, genitals, or pubic area []." 18 U.S.C. § 2256(2)(A). Only the final category is at issue here. A visual depiction of a minor engaged in the lascivious exhibition of the genitals or pubic area also meets the definition of child pornography, and the receipt of such a depiction supports a conviction for receipt of child pornography under 18 U.S.C. §§ 2252(a)(2) and (b)(1). *Id.* § 2256(8) (defining "child pornography" as "any visual depiction" of a minor engaging in "sexually explicit conduct").

The statute does not define the term "lascivious." We have, therefore, adopted a six-factor test from *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986) as "a rubric for analyzing whether a particular image is lascivious." *United States v. Hodge*, 805 F.3d 675, 680 (6th Cir. 2015); *see also United States v. Daniels*, 653 F.3d 399, 407 (6th Cir. 2011).

The *Dost* factors consider whether (1) "the focal point of the visual depiction is on the child's genitalia or pubic area"; (2) "the setting of the visual depiction is sexually suggestive";

(3) "the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child"; (4) "the child is fully or partially clothed, or nude"; (5) "the visual depiction suggests sexual coyness or a willingness to engage in sexual activity"; or (6) "the visual depiction is intended or designed to elicit a sexual response in the viewer." *Daniels*, 653 F.3d at 407 (internal citation and quotation marks omitted). To assess whether a visual depiction is intended or designed to elicit a sexual response pursuant to the sixth *Dost* factor, we also consider "the context in which the images were taken, but limit[] the consideration of contextual evidence to the circumstances directly related to the taking of the images." *United States v. Brown*, 579 F.3d 672, 683 (6th Cir. 2009). Relevant contextual factors include "evidence about (1) where, when, and under what circumstances the photographs were taken, (2) the presence of other images of the same victim(s) taken at or around the same time, and (3) any statements a defendant made about the images." *Id.* at 683–84.

Before reaching the depictions at issue here, we address Jakits's contention that the *Dost* factors are inconsistent with the Supreme Court's line of obscenity cases, including *Miller v. California*, 413 U.S. 15 (1973), *New York v. Ferber*, 458 U.S. 747 (1982), *United States v. X-Citement Video, Inc.*, 513 U.S. 64 (1994), and *United States v. Williams*, 553 U.S. 285 (2008). Those cases examined statutory provisions like those at issue here to ensure they did not inadvertently capture speech protected by the First Amendment. *See, e.g.*, *Williams*, 553 U.S. at 296–97, 307 (holding that 18 U.S.C. § 2252A(a)(3)(B) is not overbroad and discussing "sexually explicit conduct" in the context of "simulated sexual intercourse"). Jakits argues that these cases should persuade us to follow the D.C. Circuit in rejecting the *Dost* factors and construing "lascivious exhibition" to require a display of a minor's "anus, genitalia, or pubic area in a lustful manner that connotes the commission of a sexual act." *See United States v. Hillie*, 39 F.4th 674, 686 (D.C. Cir. 2022).

The D.C. Circuit's rejection of the *Dost* factors in *Hillie*, however, is incompatible with our precedent expressly adopting them. *See Hodge,* 805 F.3d at 680; *Daniels*, 653 F.3d at 407; *Brown*, 579 F.3d at 680. Other circuits, too, have declined to follow *Hillie*. *See, e.g., United States v. Donoho*, 76 F.4th 588, 599–600 (7th Cir. 2023); *United States v. Boam*, 69 F.4th 601,

613 (9th Cir. 2023); *United States v. McCoy*, 108 F.4th 639, 643–44 (8th Cir. 2024) (en banc); *United States v. Sanders*, 107 F.4th 234, 263–64 (4th Cir. 2024).

We are unpersuaded by *Hillie*'s reasoning that application of the *Dost* factors is incompatible with Supreme Court precedent. *See Donoho*, 76 F.4th at 600. The *Dost* factors offer a framework to guide analysis, not a checklist or substitute for the statutory text. Indeed, we have noted that the *Dost* factors are not "exhaustive" and that "an image need not satisfy every factor to be deemed lascivious." *Brown*, 579 F.3d at 680 (internal citations and quotation marks omitted); *United States v. Sweeney*, 711 F. App'x 263, 268 (6th Cir. 2017). The factors' utility instead lies in their ability to assist courts and juries with engaging in the fact-intensive analysis necessary to separate innocent conduct from those depictions that lie at the "hard core" of child pornography. *See Ferber*, 458 U.S. at 773. This is consistent with *Miller* and its progeny.

Declining Jakits's invitation to disturb our settled precedent, we therefore assess the visual depictions or requested visual depictions underlying Jakits's convictions in light of the *Dost* factors.

*Counts One and Eight.* Based on our review of the images supporting Jakits's convictions on Counts One and Eight, a rational juror could find that several of the images depict the "lascivious exhibition" of Jae's genitals.

We need not describe the images in detail; they clearly satisfy several of the *Dost* factors. For example, two of the images Jakits received depict nude close-ups of Jae's vagina. The focal point of those depictions is the genitals or pubic area. *See Daniels*, 653 F.3d at 407. Another image depicts Jae posed and nude on a bed. The bedroom setting of that image is sexually suggestive. *See United States v. Nichols*, 527 F. App'x 344, 347 (6th Cir. 2013) ("The photographs were taken in a bedroom, including several images taken while the victim was lying in a bed—a place that is generally associated with sexual activity."). And Jae is posed in a manner inappropriate for her age, as it is unnatural for a child to pose nude on a bed, with her legs slightly spread in a manner that displays her genitals. *See, e.g.*, *Daniels*, 653 F.3d at 407–08. Her pursed lips in that image and another indicate that she posed for the camera, precluding

any conclusion that these images arose from some natural or medical context. *See, e.g.*, *United States v. Campbell*, 81 F. App'x 532, 536–37 (6th Cir. 2003).

Looking beyond the four corners of the images to the circumstances in which Jae captured them confirms that the images are designed to elicit a sexual response. *See Brown*, 579 F.3d at 683. Jakits gained access to Jae through his contact with her mother, and both parties knew that Jae's mother sent depictions of live sex acts to Jakits for money. And when Jakits offered Jae money for photographs and she sent him nude close-ups of her genitals, he likewise paid her.

Collectively viewing the photographs Jakits received from Jae—which depict the "same victim[] [and were] taken at or around the same time"—is also instructive. *Id.* at 684. While a close-up of a vagina may not alone equate to the "lascivious" exhibition of the genitals, *see id.* at 681–82, viewing the image beside other images of Jae posing "bent over a bed" because Jakits "told [her] to bend over something" and reclining on a bed reveals the image's intent to elicit a sexual response. (Sealed Trial Tr., R. 195, PageID 2653 (describing Image 2A22); *id.* at PageID 2653–54 (describing Image 2A23).) We can also consider Jakits's statements about the images. *See Brown*, 579 F.3d at 684. After sending a friend a photo of Jae's nude torso and a close-up of Jae's genitals, he boasted that Jae was an eighteen-year-old girl he spent the night with and described how "sweet" she "tastes and feels." (Government Ex. 6B, R. 226, PageID 4271.) Using the images to bolster his misrepresentations about a sexual encounter shows that Jakits understood that the images were intended to elicit a sexual response in the viewer.

Resisting the jury's finding, Jakits contends that the images he received "are unremarkable aside from the fact of the nudity," noting that "[i]n none of the images was Jae touching her genitals, using (or even holding) a sex toy or other sexual item, or simulating any sexual act." (Appellant Br. 23.) Images of Jae "touching her genitals," using a "sex toy," or "simulating any sexual act" would plainly fall within the definition of "sexually explicit conduct" as depictions of actual or simulated sexual intercourse or masturbation. *See* §§2256(2)(A)(i) and (iii). But the images supporting Jakits's conviction under Counts One and Eight are nonetheless depictions of sexually explicit conduct because they depict the lascivious exhibition of the genitals or pubic area under § 2256(2)(A)(v). And Count Eight

specifically charged Jakits with receiving such depictions, not depictions of masturbation or simulated sexual intercourse. Requiring that images depict masturbation or actual or simulated sexual intercourse to be deemed to depict sexually explicit conduct would make § 2256(2)(A)(v) redundant, and we "avoid constructions of statutes that would render Congress's chosen words superfluous." *United States v. Wilkes*, 78 F.4th 272, 280 (6th Cir. 2023).

Jakits also emphasizes the limited number of images, describing them as only a "handful of digital photos." (Appellant Br. 5.) Insofar as Jakits attempts to argue that the number of photographs supports his sufficiency argument, his argument is unavailing. There is no minimum number of images required to be convicted under the statute, and we have previously affirmed a conviction under § 2251(a) for possession of "a single nude photograph." *See Daniels*, 653 F.3d at 407–08.

When assessing the images, a rational juror could therefore conclude that Jakits persuaded, induced, or enticed Jae to create images depicting sexually explicit conduct and send them to him in violation of 18 U.S.C. §§ 2251(a) and (e). In receiving the photographs, he received images depicting a minor engaged in sexually explicit conduct in violation of 18 U.S.C. §§ 2252(a)(2) and (b)(1). We accordingly affirm his convictions on Counts One and Eight.

*Count Two.* The jury did not find that Jakits received an image depicting Nik engaged in sexually explicit conduct and instead convicted him of attempting to receive such an image in violation of 18 U.S.C. §§ 2251(a) and (e). To convict a defendant of attempted production of a lascivious image of a minor's genitals, the government must show that the defendant "specifically intended" to create a lascivious image and that the defendant took a "substantial step" toward its creation. *United States v. Sims*, 708 F.3d 832, 835 (6th Cir. 2013).

Having established that the images that Jakits enticed Jae to take depicted sexually explicit conduct, a reasonable juror could infer that Jakits sought to receive similar photos of Nik. First, he offered the same sum of money—$500—for both sets of photos. Second, he asked for Nik to pose for similar photos; for example, he asked Nik to pose with a transcript, just as he had asked Jae to do. Third, like he was unsatisfied with photos of Jae wearing her underwear, he was also unsatisfied with the clothed photos he received of Nik and asked

specifically for a "naked picture."  (Government Ex. 2B, R. 226, PageID 4236.)  Jae sent him a nude photo of Nik, but it did not constitute a close-up of her genitals, nor prominently exhibit her genitals.  He subsequently requested a call where he said he would ask Nik to "model and do certain things" and to take "a couple of pictures that [he] want[ed] her to take of how [he] want[ed] it."  (*Id.* at PageID 4240.)

Jakits argues no evidence supports a finding that he specifically asked Nik to engage in sexually explicit conduct and that he only asked for a "naked picture."  (Appellant Br. 28–29.) The texts, however, contradict his characterization.  When Jae asked that he send the desired poses over text, Jakits did not say that he only sought a nude photo of the kind they had already sent him. Instead, he said he did not want "to write/text" about the poses he wanted Nik to do. (Government Ex. 2B, R. 226, PageID 4244.)  A rational juror, therefore, could draw a reasonable inference that he was unsatisfied with the nude photograph he received from Nik and sought images like those he received from Jae.  And circumstantial evidence alone may sustain a conviction.  *Hendricks*, 950 F.3d at 352 (internal citation omitted).  Accordingly, we affirm Jakits's conviction for attempt on Count Two.

*Counts Three and Four.*  Jakits's request for a live videocall with the minor victims supports his convictions on Counts Three and Four.  As discussed above, after receiving a non-lascivious image of Nik, Jakits requested a videocall where he said he would ask her to "model and do certain things" and to take "a couple of pictures that [he] want[ed] her to take of how [he] want[ed] it."  (Government Ex. 2B, R. 226, PageID 4240.)  But Jakits also sought Jae's involvement, offering her money and requesting a "close-up of both of [their] bottoms."  (*Id.* at PageID 4250.)  A rational juror could infer that the videocall, at minimum, would have involved the minors posing in a similar manner as Jae posed in the images that she sent to Jakits.  The resulting visual depiction would have lasciviously exhibited the minors' genitals and pubic areas. Consequently, we affirm Jakits's convictions on Counts Three and Four.

## B.

Jakits's request for a live videocall with the minor victims also supports his convictions on Counts Five and Six for violating 18 U.S.C. § 2422(b).  A defendant violates 18 U.S.C.

§ 2422(b) when he "knowingly persuades, induces, entices, or coerces" a minor to engage in "any sexual activity for which any person can be charged with a criminal offense." To obtain a conviction for attempt under 18 U.S.C. § 2422(b), the government must have presented evidence of "objective, overt acts that would allow a reasonable jury to find [Jakits] had taken a substantial step toward persuading, inducing, enticing, or coercing a minor to engage in illegal sexual activity." *See United States v. Bailey*, 228 F.3d 637, 640 (6th Cir. 2000); *see also United States v. Hart*, 635 F.3d 850, 854 (6th Cir. 2011). The statute "criminalizes both the enticement and the attempted enticement, but not the actual performance of the sexual activity." *United States v. Fuller*, 77 F. App'x 371, 378 (6th Cir. 2003).

Jakits does not dispute his knowledge of the minors' ages. And the government argued that, had the videocall occurred, Jakits could have been charged with violating Ohio Revised Code § 2907.323, which prohibits the use of minors in a performance that shows them in a state of nudity. Jakits's conviction thus turns on whether a rational juror could have determined that Jakits attempted to knowingly persuade Jae and Nik to engage in "sexual activity" when he requested the videocall with both minors. Upon our review of the record, a reasonable juror could have done so.

The term "sexual activity" is not defined by the statute. However, 18 U.S.C § 2427 (2020) stipulates that "the term 'sexual activity for which any person can be charged with a criminal offense'… includes the production of child pornography, as defined in section 2256(8)." That section defines child pornography as a visual depiction of a minor engaged in "sexually explicit conduct." 18 U.S.C § 2256(8)(A). Its definition of sexually explicit conduct includes the lascivious exhibition of a minor's genitals or pubic area. *Id.* § 2256(2)(A)(v). The production of visual depictions containing the lascivious exhibition of a minor's genitals or pubic area would, therefore, constitute "sexual activity" for purposes of 18 U.S.C. § 2422(b).

A rational juror could have concluded that Jakits's intended videocall would have involved the minors engaging in sexually explicit conduct through the lascivious exhibition of their genitals. Given that Jakits offered larger and larger sums of money, coupled with his reluctance to tell the minors what he wanted them to do in the photographs and on the call, a juror could also infer Jakits sought something beyond what he had already received from Jae,

notwithstanding his insistence that he was requesting "[n]othing nasty." (Government Ex. 2B, R. 226, PageID 4250.)  A rational juror could therefore determine that the video call that Jakits repeatedly tried to persuade the minor victims to participate in would have involved sexual activity.  And as Jakits could have been charged with violating Ohio Revised Code § 2907.323 had the call materialized, his efforts to persuade the minors to participate in the videocall qualified as "any sexual activity for which any person can be charged with a criminal offense" under 18 U.S.C. § 2422(b).

Relying on a decision from the Seventh Circuit, Jakits instead argues that "sexual activity" requires interpersonal physical contact.[2]  *See United States v. Taylor*, 640 F.3d 255, 259–60 (7th Cir. 2011).  But since 18 U.S.C § 2427 stipulates that "sexual activity" is inclusive of the production of child pornography, and the production of child pornography does not require interpersonal physical contact, *see United States v. Wright*, 774 F.3d 1085, 1092 (6th Cir. 2014), restricting the meaning of 18 U.S.C. § 2422(b) to sexual activity requiring interpersonal physical contact would contravene the express statutory text.  We, therefore, join other circuits in holding that "sexual activity" under 18 U.S.C. § 2422(b) does not require interpersonal physical contact. *See United States v. Fugit*, 703 F.3d 248, 256 (4th Cir. 2012); *United States v. Dominguez*, 997 F.3d 1121, 1125 (11th Cir. 2021).

Jakits further argues that, since "sexual activity" requires physical contact under Ohio law, it was improper for the government to "allege [that the] unlawful 'sexual activity' in this case can be conduct that allegedly violates an Ohio law, but which Ohio itself does not define as 'sexual activity.'" (Appellant Br. 35 (emphasis in original omitted).)  Ohio law, however, does not constrain the definition of "sexual activity" under federal law.  Ohio law is relevant to whether Jakits violated § 2422(b) with respect to only the separate element that "any person can be charged with a criminal offense."  Since Jakits could have been charged with violating Ohio

---

[2]In 2023, Congress amended 18 U.S.C. § 2427 to specify that "the term 'sexual activity for which any person can be charged with a criminal offense' does not require interpersonal physical contact, and includes the production of child pornography [].'"  National Defense Authorization Act for Fiscal Year 2024, Pub. L. 118-31, § 5102, 137 Stat. 136, 935 (2023).  We do not view this amendment as a change to the law, but a clarification of the statute's plain meaning given conflicting circuit court decisions.  Therefore, the statute's amendment after the offense conduct here has no bearing on the validity of Jakits's conviction.

Revised Code § 2907.323, which does not require any physical contact, and the underlying conduct qualifies as sexual activity under federal law, Jakits's convictions were proper.

Accordingly, we affirm Jakits's convictions on Counts Five and Six.

C.

Title 18 U.S.C. § 2251(d)(1) criminalizes the creation or publication of "any notice" seeking to receive visual depictions of minors "engaging in sexually explicit conduct" or seeking or offering "participation in any act of sexually explicit conduct by or with any minor for the purpose of producing a visual depiction of such conduct." The government argued, and the jury determined, that Jakits's texts to Jae qualified as such notices.

Jakits argues that he did not expressly request photos depicting sexually explicit conduct because he asked for only "naked picture[s]," and the minor victims' understood his request as one for only naked images. (Appellant Br. 28–29, 37-38.) In describing at trial why and how she took the photos, Jae acknowledged that Jakits did not use terms like "boobs" or "vagina" while requesting these images. (Sealed Trial Tr., R. 195, PageID 2638–39.) Instead, he would request "a close-up." (*Id.*) If "he said no," Jae said that she would "send him a different body part." (*Id.*) She ultimately sent him photos that she believed he asked of her, and these photos lasciviously exhibited Jae's genitals.

Even if Jakits did not request sexually explicit photos in exact terms, circumstantial evidence supports Jakits's intention to receive them. *See Hendricks*, 950 F.3d at 352. His correspondence with Jae reveals no reluctance, reticence, or revulsion at the images he received. Rather than reject the images Jae sent him, he paid her for them and saved them to his devices. Then, after receiving these images from Jae, he sought further content from Nik, raising the payout and incentives offered. A reasonable juror could thus determine that Jakits's texts requested that Jae send him images depicting her engaged in the lascivious exhibition of her genitals.

Citing an Eleventh Circuit case, Jakits further argues that, even if his text messages to Jae specifically sought the minor victims' participation in "sexually explicit conduct," the texts

would still not violate § 2251(d)(1)(B) because, as private person-to-person text messages, they are not "notice[s]" or "advertisement[s]" as contemplated by the statute. *See United States v. Caniff*, 955 F.3d 1183, 1188–92 (11th Cir. 2020). He concedes that this court took the opposite view in *United States v. Sammons*, 55 F.4th 1062, 1067–68 (6th Cir. 2022), which held that one-to-one messages may amount to notices inviting child pornography.

Jakits suggests that *Sammons* may be distinguishable on the facts, as that case involved private chat messages in an online forum as opposed to text messages. *Sammons*, 55 F.4th at 1065. But *Sammons* does not limit its discussion to private online chats; it engages with the broader issue of whether "non-public, one-on-one messages" can amount to notices. 55 F.4th at 1066. Text messages are non-public, one-on-one messages. So *Sammons* applies and remains our controlling authority. *See Salmi v. Sec'y of Health & Hum. Servs.*, 774 F.2d 685, 689 (6th Cir. 1985) ("A panel of this Court cannot overrule the decision of another panel.") (internal citation omitted).

Consequently, a reasonable juror could have found that Jakits's text messages requested that the minor victims engage in sexually explicit conduct and that those text messages constituted notices under 18 U.S.C. § 2251(d)(1). We affirm Jakits's conviction on Count Seven.

Sufficient evidence, therefore, supports Jakits's convictions on all eight counts.

III.

Jakits also contends the district court failed to instruct or incorrectly instructed the jury on the meaning of "sexually explicit conduct" and "lascivious exhibition" under 18 U.S.C. §§ 2251(a) and 2256(2)(A)(v), and "sexual activity" under 18 U.S.C. § 2422(b). He argues that the district court should have used his proposed instructions. We are unpersuaded.

We review the legal accuracy of the instructions de novo. *United States v. You*, 74 F.4th 378, 391 (6th Cir. 2023). And we review a challenge to the trial court's denial of a requested jury instruction for abuse of discretion and "reverse only if the denied instruction was: (1) a correct statement of the law, (2) not substantially covered by the charge actually delivered to the

jury, and (3) concern[ed] a point so important in the trial that the failure to give it substantially impair[ed] the defendant's defense." *United States v. Anderson*, 67 F.4th 755, 764 (6th Cir. 2023) (internal quotation marks omitted) (alterations in original).

With respect to the meaning of "sexually explicit conduct" and "lascivious exhibition" under 18 U.S.C. § 2251(a), the district court utilized this court's pattern instruction for sexual exploitation of a minor, Sixth Circuit Pattern Instruction 16.01. These instructions include the *Dost* factors, and the district court modified one factor—in Jakits's favor—to stipulate that "nudity is not determinative." (Op. and Order Denying Mot. for Acquittal, R. 205, PageID 3981–82.) We have previously held that Sixth Circuit Pattern Instruction 16.01 is "soundly based on the law." *See United States v. Frei*, 995 F.3d 561, 565–66 (6th Cir. 2021); *see also Guy*, 708 F. App'x at 262 (holding that the district court did not err when following Sixth Circuit Pattern Instruction 16.01 and refusing to omit the *Dost* factors from the instructions because "[t]he inclusion of the *Dost* factors gave the jury information—in this case, the legal definition of 'lasciviousness'—necessary for it to determine whether [the defendant] attempted to use a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of sexually explicit conduct."). The district court, therefore, did not abuse its discretion by adopting the instruction.

With respect to the meaning of "sexual activity" per 18 U.S.C. § 2422(b), the district court's instruction provided no specific definition of sexual activity and instead stated the elements of the offense. The district court also instructed that the government would need to prove that, had the video call occurred, Jakits could have been charged with a crime under Ohio Revised Code § 2907.323. As discussed above, activity that results in the creation of child pornography falls within the plain meaning of sexual activity. And the court instructed the jury on the definition of child pornography. A reasonable juror would not have needed further clarification to accurately review the evidence. *See Averett v. U.S. Dep't of Health & Hum. Servs.*, 943 F.3d 313, 315 (6th Cir. 2019) ("A statute's terms are not ambiguous simply because the statute itself does not define them.").

Finally, Jakits's proposed instructions rested on his arguments related to the meaning of "sexually explicit conduct" and "lascivious exhibition" per 18 U.S.C. § 2251(a) and the meaning

of "sexual activity" per 18 U.S.C. § 2422(b) summarized above.  For reasons previously discussed, we reject Jakits's constructions of these terms and conclude that they do not correctly represent the law.  The district court, therefore, did not abuse its discretion in rejecting his proposed instructions.

IV.

Jakits further challenges his convictions by arguing that the district court violated his constitutional right to present a complete defense by excluding evidence that Ashley and Jae may have prompted a different minor to take sexually suggestive images to send to Jakits. He also challenges the exclusion of certain comments in the recorded jail call transcripts about Jae and Nik receiving money from other men.  Again, we are unconvinced.

We review the district court's evidentiary rulings for abuse of discretion and will reverse only if "left with a definite and firm conviction that the [district] court committed a clear error of judgment."  *United States v. Mack*, 808 F.3d 1074, 1084 (6th Cir. 2015) (internal citation and quotation marks omitted).  Where a defendant claims an evidentiary ruling violates the Sixth Amendment, however, we review "the legal aspects of the constitutional violation" de novo. *United States v. Reichert*, 747 F.3d 445, 453 (6th Cir. 2014).

The Constitution secures the right of defendants to present a complete defense.  *Id.* (citing *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006)).  The defendant, however, "does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence."  *Id.* (internal citation and quotation marks omitted).  "[T]he exclusion of defense evidence violates a defendant's constitutional right to present a defense only where it is 'arbitrary' or 'disproportionate.'"  *Id.* (citing *Holmes*, 547 U.S. at 324–26.)  We also consider whether the evidence was central to the defendant's defense.  *United States v. Ogden*, 685 F.3d 600, 605 (6th Cir. 2012) (citing *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)).

A.

The district court excluded evidence that a different minor may have taken sexually suggestive photos to send to Jakits at the behest of Ashley or Jae under Federal Rules of

Evidence 403 and 404(b).  Rule 403 permits a district court to "exclude relevant evidence if its probative value is substantially outweighed by" the risk of unfair prejudice or confusing the jury. We grant the district court "'very broad' discretion in making its determinations" on this front. *United States v. Libbey-Tipton*, 948 F.3d 694, 701 (6th Cir. 2020) (quoting *United States v. Newsom*, 452 F.3d 593, 603 (6th Cir. 2006)).  Rule 404(b) prohibits the introduction of wrong acts to prove propensity.

The district court did not abuse its discretion in excluding this evidence.  First, it was not relevant.  The type of images that she took—photos of the minor wearing her underwear—are different from those that Jakits enticed Jae to take.  And even if Ashley attempted to sexually exploit the minor, it is not probative of whether she planned to use her daughters to do the same. Instead, the record shows the opposite, as discussed further below.  Lastly, it was likely to confuse the jury by prompting a "mini trial" about the photos of the minor, *see United States v. Hough*, 385 F. App'x 535, 537-38 (6th Cir. 2010), the details of which had no bearing on whether Jakits solicited or received sexually explicit photographs from Jae or Nik.  Exclusion was proper or, at least, was not arbitrary or disproportionate.

B.

The district court also determined that the evidence Jakits sought to admit of the minor victims obtaining money from other men constituted evidence of their sexual behavior and was excludable pursuant to Federal Rule of Evidence 412.  In cases involving alleged sexual misconduct, Rule 412(a)(1) "forbids the introduction of evidence offered to prove that a victim engaged in other sexual behavior."  *Ogden*, 685 F.3d at 605 (internal citations and quotation marks omitted).  For example, in *Ogden* we considered the interplay of Rule 412 and the defendant's constitutional right to present a complete defense.  *Id.*  We determined that evidence showing that a minor victim had sent explicit pictures to men other than the defendant was inadmissible under Rule 412, and that its admission was not constitutionally required in that case.  *Id.* at 605–06.

Jakits counters by arguing that evidence of a wider scheme to target men for money would not have constituted evidence of the minor victims' sexual behavior and instead was

evidence only "of a general desire and plan to 'work' other men for money and Ashley['s] enlistment of her teenage daughters in doing so." (Appellant Br. 47.) But his argument is circular.

He asserts that he sought to offer evidence that "rather than him attempting to obtain or solicit images depicting 'sexually explicit conduct,' the teenage girls, their mother and grandmother *set the defendant up* by conspiring to obtain money from him in exchange for naked pictures," and that "[t]his was part of an ongoing family enterprise focused on the exploitation of multiple men for money." (Reply Br. 1.) The scheme in which he argues he was entrapped was one where he was set up to receive sexually explicit images of the minor victims as part of a broader family enterprise. For that broader enterprise to be relevant, it would have to involve similar conduct: principally, minor victims sending sexually explicit photos to men for money. Such conduct would have necessarily amounted to evidence of the minor victims' sexual behavior with others. The district court's decision to exclude it was not arbitrary.

Moreover, this evidence would not have been critical to Jakits's defense, as Jakits's arguments that he was set up are contradicted not only by substantial evidence that Jakits requested and downloaded sexually explicit images of the minor victims, but also by the very jail call transcripts he sought to introduce. In a recorded jail telephone call between Ashley and Nik on January 10, Nik told Ashley that Jakits called and sought pictures from Jae and Nik. When Nik joked about sending photos to Jakits, Ashley warned Nik about Jakits and explicitly instructed her to not send any photographs. If they needed money, Ashley said that she would reach out to a different man for help.

Jakits contends this exchange—where Nik notes that she, Jae, and her grandmother had joked about sending him pictures—is evidence of a scheme to send Jakits photos. He also argues that the reference to the girls possibly obtaining money from another man offers evidence of a wider scheme to target men for money.

The exchange reveals the opposite. If a scheme to entrap Jakits existed, Ashley would have instructed Nik to send photos to Jakits, not cautioned her against doing so. Moreover, no evidence in the record suggests that the other man would provide the minors with money *in*

*exchange* for sexually explicit content. The other places in the call transcripts that refer to the minors obtaining money from other men also do not show that they would obtain money *in payment for* sexually explicit images of the minors themselves.

Further undermining Jakits's argument that the excluded transcripts would reveal a scheme to entrap Jakits is a segment of a recorded call where Ashley expressly told Jakits to stay away from her daughters, reminding him that they were children. Ashley's distress at learning that her daughters sent photos to Jakits is also apparent in other parts of the available transcripts. Consequently, rather than featuring evidence that would cause a reasonable juror to acquit Jakits, the excluded transcripts only contain further evidence that Jakits knew Jae and Nik were children and that their mother told him that his communications with them were wrong. The district court's exclusion of the evidence was proper.

V.

For the foregoing reasons, we affirm Jakits's convictions on all eight counts.